UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CORTEC CORPORATION, a Minnesota corporation :

                Plaintiff,

      -against-

ERSTE BANK DER OESTERREICHISCHEN
SPARKASSEN AG (ERSTE BANK), an Austrian
corporation,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

No. 07 Civ. 6094 (CM) (DFE)

**Electronically Filed**

# MEMORANDUM OF LAW
# IN SUPPORT OF THE MOTION OF DEFENDANT
# ERSTE BANK DER OESTERREICHISCHEN SPARKASSEN AG
# TO DISMISS THE COMPLAINT

James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorney for Defendant Erste Bank der
oesterreichischen Sparkassen AG*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

BACKGROUND ....................................................................................................................... 1

A. Agreements Between ESB, EcoCortec and Cortec ......................................................... 2

B. Plaintiff's Factual Allegations and Claims ...................................................................... 3

ARGUMENT ............................................................................................................................. 6

    I.    THE COURT SHOULD DISMISS CORTEC'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ON THE BASIS THAT CORTEC HAS FAILED TO PROPERLY ALLEGE THE ELEMENTS OF THE CLAIM ............................................................................. 7

    II.    THE COURT SHOULD DISMISS CORTEC'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ON THE BASIS THAT THE COMPLAINT FAILS TO STATE A CLAIM ................................................................................................... 10

    III.    THE COURT SHOULD DISMISS CORTEC'S UNSUPPORTED CLAIMS FOR ACTUAL, APPARENT AND IMPLIED/OSTENSIBLE AGENCY ................................................................................................................ 11

        A. Cortec Lacks Standing To Maintain Any Action Arising Out of An Alleged Breach of a Contract To Which It Is Not A Party ........................ 12

        B. Both The Loan Agreement and The Complaint Fail To Establish A Principal-Agent Relationship Between Erste Bank AG and ESB ............. 12

            1. The Loan Agreement ................................................................... 12

            2. The Complaint ............................................................................. 13

        C. Cortec Fails to Establish That Erste Bank AG Vested ESB With Actual Authority to Act on its Behalf ......................................................... 14

        D. Cortec Fails to Establish That Erste Bank AG Vested ESB With Apparent Authority to Act on its Behalf ................................................... 15

        E. Cortec Fails to Establish That Erste Bank AG Vested ESB With Implied or Ostensible Authority to Act on its Behalf ................................ 15

| | | | |
|---|---|---|---|
| IV. | | THE COURT SHOULD DISMISS THE ACTION ON THE BASIS OF THE EXCLUSIVE JURISDICTION OF THE CROATIAN COURT AS STIPULATED IN BOTH THE LOAN AND SURETY AGREEMENTS | 16 |
| | A. | The Forum Selection Clause Clearly Vests Croatian Courts With Exclusive Jurisdiction Over the Cause of Action | 16 |
| | B. | *Enforcement of the Forum Selection Clause is Both Reasonable and Just* | 17 |
| | C. | Erste Bank AG May Invoke the Forum Selection Clause As A Non-Party To The Original Agreement | 17 |
| | D. | Cortec Is Bound By the Forum Selection Clause In The Loan Agreement And The Surety Agreement | 18 |
| | E. | The Scope Of the Forum Selection Clause Validly Encompasses Tort Actions Arising Out Of The Agreement | 19 |
| V. | | THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO THE DOCTRINE OF FORUM NON CONVENIENS | 19 |
| | A. | Plaintiff's Choice of Forum is Not Entitled to Deference | 20 |
| | B. | Croatia Is An Adequate Alternative Forum To Adjudicate This Matter | 20 |
| | C. | The Private Interest Factors Decidedly Favor Croatia As A Forum | 21 |
| | D. | The Public Interest Factors Decidedly Favor Croatia As A Forum | 22 |
| VI. | | THE COURT SHOULD DISMISS THIS ACTION BECAUSE ESB AND ECOCORTEC ARE INDISPENSABLE PARTIES THAT CANNOT BE JOINED AS DEFENDANTS IN THIS FORUM | 23 |
| | A. | Erste Bank Croatia and EcoCortec May Not Be Feasibly Joined Under Rule 19(a) | 23 |
| | B. | The Action Should Be Dismissed Because ESB and EcoCortec Are Indispensable Parties Under Rule 19(b) and Joinder Is Not Feasible | 24 |
| CONCLUSION | | | 25 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Albany Insurance Co. v. Banco Mexicano, S.A.*, No. 96 Civ 9473 DAB, 1998
WL 730337 (S.D.N.Y. Oct. 19, 1998) .................................................................................. 16, 17

*Allstate Life Insurance Co. v. Linter Group Ltd.*, 994 F.2d 996 (2d Cir. 1993) ............................ 22

*Atlantic Container Line AB v. Aref Hassan Abul, Inc.*, 281 F. Supp. 2d 457
(N.D.N.Y. 2003) .................................................................................................................. 11, 14, 15

*Blimpie International, Inc. v. ICA Menyforetagen AB*, No. 96 Civ. 3082 (RWS),
1997 U.S. Dist. LEXIS 3950 (S.D.N.Y. March 21, 1997) .................................................. 20, 21, 22, 23

*Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228 (2d Cir. 1991) ................... 18

*Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F. Supp. 1252 (S.D.N.Y. 1988) ...................... 7

*Cohen v. Acorn International Ltd.*, 944 F. Supp. 204 (S.D.N.Y. 1996) ...................................... 7, 9

*Cortec Industrial, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .................................... 2, 7

*Crystal v. Foy*, 562 F. Supp. 422 (S.D.N.Y. 1983) ........................................................................ 13

*Cuno, Inc. v. Hayward Indust. Products Inc.*, No. 03 Civ. 3076 (MBM), 2005 WL
1123877 (S.D.N.Y. May 10, 2005) ............................................................................................ 18

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ........................................ 7, 8, 9, 10

*Evergreen Marine Corp. v. Welgrow Intern. Inc.*, 954 F. Supp. 101 (S.D.N.Y. 1997) ................. 25

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ...................................................................... 15

*Gumpert v. Bon Ami Company*, 251 F.2d 735 (2d Cir. 1958) ...................................................... 15

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ................................................................... 21

*Hishon v. King & Spaulding*, 467 U.S. 69 (1984) .......................................................................... 7

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y.1997),
aff'd, 173 F.3d 844, 1999 WL 265022 (2d Cir.1999) ................................................................ 13

*John Boutari & Son v. Attiki Importers*, 22 F.3d 51 (2d Cir. 1994) .............................................. 16

*Kirch v. Liberty Media Corp*, 449 F.3d 388 (2d Cir. 2006) ................................................. 8, 9, 10

*Korean Press Agency v. Yonhap News Agency*, 421 F. Supp. 2d 775 (S.D.N.Y. 2006) ............... 19

*Madalynn Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234
  (2d Cir. 2004) ............................................................................................. 19, 20, 21, 22

*Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082 (2d Cir. 1997) ...................................................... 14

*Peoples Westchester Sav. Bank v. Ganc*, 705 F. Supp. 164 (S.D.N.Y. 1989) ............................... 16

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ............................................................... 19, 20

*Quebecor World (USA), Inc. v. Harsha Associates, L.L.C.*, 455 F. Supp. 2d 236
  (W.D.N.Y. 2006) ............................................................................................................... 18

*Rapoport v. Asia Electronics Holding Co., Inc.*, 88 F. Supp. 2d 179
  (S.D.N.Y. 2000) ........................................................................................... 2, 7, 9, 10, 13

*Soberay Machine & Equipment Co. v. MRF Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999) ................. 12

*Straker v. Metropolitan Transit Authority*, 333 F. Supp. 2d 91 (E.D.N.Y. 2004) ................... 13, 14

## STATE CASES

*Besicorp Ltd. v. Kahn*, 290 A.D.2d 147, 736 N.Y.S.2d 708 (3d Dep't. 2002) ............................... 10

*Brennen v. Phyto-Riker Pharmaceuticals, Ltd.*, No. 01 Civ. 11815 (DLC),
  2002 WL. 1349742 (S.D.N.Y. June 20, 2002) ................................................................. 19

*Brown v. North America Energy Programs, Inc.*, No. 46749, 1983 WL. 2772
  (Ohio App. Nov. 17, 1983) ................................................................................................ 12

*Caravella v. City of New York*, 79 Fed. Appx. 452, 2003 WL. 22441790
  (2d Cir. Oct. 27, 2003) ....................................................................................................... 12

*Chang v. Gordon*, No. 96 Civ. 0152 (JFK), 1997 WL. 563288 (S.D.N.Y. Sept. 8, 1997) ............. 6

*Church v. Schaefer*, No. 74 Civ. 5247 (JMC), 1976 WL. 1203 (S.D.N.Y. Jan 5, 1976) .............. 14

*D'Accord Financial Services, Inc. v. Metsa-Serla Oy*, No. 98 Civ. 5847 (DLC),
  1999 WL. 58916 (S.D.N.Y. Feb. 8, 1999) ........................................................................ 13

*Depot Const. Corp. v. City of New York*, 46 N.Y.2d 859 ............................................................. 12

*Direct Mail Production Services Ltd. v. MBNA Corporation*, No. 99 Civ. 10550
  (SHS), 2000 WL. 1277597 (S.D.N.Y. Sept. 7, 2000) ................................................. 16, 17

*Lerwick v. Kelsey*, 24 A.D.3d 918, 806 N.Y.S.2d 732 (3d Dep't. 2005) ..................................... 11

*Martha Stewart Living Omnimedia LLC v. Beers Flower Shop, Inc.*, No. 98 Civ. 3398
    (RWS), 1998 WL. 646648 (S.D.N.Y. Sept. 21, 1998) ............................................................ 15

*Martian Entertainment, LLC v. Harris*, No. 600384/06, 2006 WL. 2167178
    (N.Y. Sup. Ct., July 5, 2006) ................................................................................................ 8, 9

*Marvullo v. Gruner & Jahr AG & Co.*, No. 98 CIV. 5000 (RLC), 2001 WL. 40772 ............. 11, 14

*Nowakowski v. Kohlberg*, No. 89 Civ. 5621, 1991 WL. 3028
    (S.D.N.Y. January 8, 1991) ................................................................................................ 23, 24

*Renel Const. Inc. v. Brooklyn Co-op Meet Distribution Center Inc.*, 59 A.D.2d 391,
    399 N.Y.S.2d 429 (1st Dep't 1977) ........................................................................................ 12

*Rohrbaugh v. U.S. Management, Inc.*, No. 05-CV-3486 (SLT) (RML),
    2007 WL 1965417 (E.D.N.Y. July 2, 2007) .......................................................................... 18

*Sterling National Bank v. Eastern Shipping Worldwide, Inc.*, 35 A.D.3d 222,
    826 N.Y.S.2d 235 (1st Dep't 2006) ........................................................................................ 16

## FEDERAL STATUTES

Fed. R. Civ. P. 19(a) ..................................................................................................................... 23

Fed. R. Civ. P. 19(a)(1)-(2) ........................................................................................................... 23

Fed. R. Civ. P. 19(a)(2) ........................................................................................................... 23, 24

Fed. R. Civ. P. 19(b) ..................................................................................................................... 24

Defendant Erste Bank der oesterreichischen Sparkassen AG ("Erste Bank AG") submits this memorandum of law in support of its motion to dismiss the claims asserted by plaintiff Cortec Corporation ("Cortec") under Rules 12(b)(1), (6), and (7) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff's claims in this action relate to an April 2006 loan agreement between Erste & Steiermarkische Bank d.d. ("ESB") and EcoCortec d.o.o. ("EcoCortec"), two Croatian non-parties, with respect to the proposed construction of an EcoCortec facility in Beli Manastir, Croatia. According to the loan application to ESB, all of the shares in EcoCortec were owned by Boris Miksic, the CEO and President of Cortec. Cortec executed a guarantee to ESB of EcoCortec's obligations under the loan.

In March 2007, ESB exercised its rights under the loan agreement to terminate the loan and call due the outstanding balance of 1.6 million Euro. Cortec claims that the termination of the loan prevented EcoCortec from completing the EcoCortec facility and supplying Cortec with anti-corrosion film products. Cortec alleges that these "unlawful actions also interfered with Cortec's ability to satisfy its obligations under its distribution agreements, and in some cases, its contracts with specific customers." (Compl. ¶ 56).

Cortec seeks to recover damages against Erste Bank AG under claims of tortious interference with contract and tortious interference with prospective economic advantage. Cortec also claims that that, though neither Erste Bank AG nor Cortec was a party to the loan agreement, Erste Bank AG is liable to Cortec for the alleged breach of the loan agreement under theories of actual or apparent agency. Plaintiff also seeks a declaratory judgment that Cortec is not in default under the terms of the guarantee to nonparty ESB.

A. **Agreements Between ESB, EcoCortec and Cortec**

Although Cortec failed to attach to the Complaint the loan agreement, guarantee, and other documents upon which it relies, the Court can nevertheless examine these documents because they are integral to Plaintiff's claims. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (finding that in a Rule 12(b)(6) motion a court can consider documents not attached to the complaint "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint" because the contents of the documents are integral to the plaintiff's claims.). Furthermore, where the documents relied upon by Plaintiff contradict the allegations in the Complaint, the documents control and Court need not accept the allegations as true. See Rapoport v. Asia Electronics Holding Co., Inc., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

The underlying agreement at issue in this litigation is the loan agreement dated April 6 2006 ("Loan Agreement"), attached to the accompanying Declaration of Josip Čiček ("Čiček Decl.") as Exhibit D. One of the terms of the Loan Agreement was that Cortec guarantee EcoCortec's performance thereunder. On April 6, 2006, Cortec and Boris Miksic, acting as the surety, and ESB entered into an Agreement on Joint Surety "[w]ith the purpose of securing the Bank's claim arising from the Loan Agreement" ("Surety Agreement"), attached to Čiček Decl. as Exhibit F. The Loan Agreement was further secured with a mortgage on the Croatian parcel in Beli Manastir ("Security Agreement"), attached to Čiček Decl. as Exhibit H.

The Loan Agreement provides grounds whereby ESB can terminate the loan and request collection of the loan before its term would otherwise expire. See Čiček Decl. Exhibit D (Loan Agreement ¶ 13). Article 2 of the Surety Agreement states: "By signing this Agreement the Sureties irrevocably undertake to entirely settle all the obligations of the Principal Debtor

2

[EcoCortec] arising from the Loan Agreement at the Bank's first request and without delay." Čiček Decl. Exhibit F (Surety Agreement Art. 2). On March 8, 2007, ESB issued a notice terminating the Loan Agreement ("Termination Notice"). The Termination Notice, attached to Čiček Decl. as Exhibit J, states: "Considering that circumstances stated in the Agreement on Long-term Loan of [April 6, 2006], loan number 510937724, article 13, occurred, we hereby terminate the loan in question as of [March 9, 2007]."

The Loan Agreement is between ESB and EcoCortec; the Surety Agreement is between ESB and Cortec and Miksic. Erste Bank AG is not a party to any of the Agreements. The Loan Agreement has a forum selection clause which states that "[i]n case of dispute, the court in the place of the Bank's [ESB's] headquarters [or, registered office] will be the competent court." Čiček Decl. Exhibit D (Loan Agreement ¶ 14). ESB's registered office is in Croatia. Additionally, Article 10 of the Surety Agreement calls for any "dispute arising from the application of this Agreement" to be decided by a Zagreb court and Croatian law to govern. See Čiček Decl. Exhibit F (Surety Agreement Art. 10).

At the time the instant action was filed, EcoCortec had already brought an action against ESB in the Trade Court in Rijeka, Croatia, Docket no. X-P-406/2007-12 (the "Croatia Proceeding"). (Compl. ¶ 59). In the Croatia Proceeding, EcoCortec is seeking to enjoin ESB from taking any actions arising from the termination of the Loan Agreement. (Compl. ¶¶ 59-61.) In a decision dated June 27, 2007, the Trade Court in Rijeka denied EcoCortec's motion for a temporary injunction, attached to Čiček Decl. as Exhibit M.

### B. Plaintiff's Factual Allegations and Claims

In the Complaint, Cortec alleges that it "formed a subsidiary, EcoCortec, a limited liability company organized and existing under the laws of Croatia ('EcoCortec'), to design,

3

construct from the ground up, equip, operate and maintain a state-of-the-art manufacturing (extrusion) facility in Beli Manastir" (Compl. ¶ 28).¹ The EcoCortec facility was eligible to be financed through a program administered by the Croatian Bank for Reconstruction and Development for the development of economic activities in Beli Manastir (the "CBRD Program"). (Compl. ¶ 32). Cortec contends that Boris Miksic sought out banks in the region for a long-term loan under the CBRD Program. (Compl. ¶ 34).

Cortec does not allege that it or EcoCortec ever met with any employee of Erste Bank AG. Instead, Cortec asserts that "[a]s part of this process, Miksic met with representatives of [ESB], whom he understood to be acting as agents for Erste Bank AG and/or Erste Bank Group. Miksic was given a copy of Erste Bank AG's annual report along with other literature from Erste Bank AG and/or the Erste Bank Group." (Compl. ¶¶ 36-37.) The Complaint alleges that representatives of ESB "led Miksic to believe that EcoCortec would be entering into a Loan with the Croatian branch of Erste Bank AG and/or the Erste Bank Group" and that "certain statements" were made by representatives of ESB "to the effect that [ESB] is the agent of Erste Bank AG, or is a branch of the Erste Bank Group." (Compl. ¶¶ 39-40.) The Complaint fails to provide any details regarding these statements.

Plaintiff does not allege any facts in support of its conclusory allegation that Erste Bank AG held out ESB as its agent. Rather, Cortec relies on unspecified statements that ESB allegedly made to Miksic. (Compl. ¶ 40). The only statement cited in the Complaint that is attributable to Erste Bank AG is a passage quoted from its 2005 Annual Report:

---

¹ EcoCortec appears actually to be an affiliate or "sister corporation" of Cortec, having to some extent a common shareholder (Miksic). In the share ownership section of the Loan Application, EcoCortec certified that all shares were owned by Miksic; but the accuracy of that application is among the issues being litigated in Zagreb. See ESB Loan Application completed by EcoCortec ("Loan Application"), attached to Čiček Decl. as Exhibit B.

4

> What really sets our acquisition policy apart is our post deal integration expertise. The restructuring and integration process typically starts the day after signing. A service agreement gives Erste Bank experts immediate access, so that they can familiarized themselves with day-to-day operations of the bank right away. Following closing of the transaction, a tried and tested transformation programme is put in place and executed by a multinational transformation team, led by a senior Erste Bank executive. It typically lasts no longer than 18 months and covers all material aspects of the business. In sensitive areas, such as risk management, existing staff are immediately assisted by Erste Bank staff in order to upgrade the function to group standards as quickly as feasible. As a result of our highly developed regional expertise and our positive acquisition track record, we will continue to grow our regional franchise both through carefully selected acquisitions that fit the existing networks, and organically.

(Compl. ¶ 48; see Erste Bank AG 2005 Annual Report ("Annual Report") at 22, attached to Čiček Decl. as Exhibit K.) Contrary to Cortec's allegations, the quoted passage simply states that Erste Bank AG seeks to have its affiliates upgrade their systems to the Erste Bank AG standard, but it does not suggest, much less state, that ESB is the agent of Erste Bank AG. As noted in the Annual Report, Erste Bank AG owns slightly more than half of the shares in ESB. See id. (Annual Report at 64). Plaintiff fails to cite to any other evidence in support of its contention that Erste Bank AG held ESB out as its agent, or that Erste Bank AG was the principal in the transactions at issue. Moreover, the Loan Application, the Loan Agreement, and the Surety Agreement nowhere even mention Erste Bank AG; ESB signed the agreements in its own name and likewise issued the Termination Notice. See Čiček Decl. Exhibits B, D, F, J.

Cortec's Complaint asserts six causes of action based on these allegations. In the first cause of action, Cortec asserts a claim for tortious interference with contract, claiming that Erste Bank AG knew of and "intentionally interfered with Cortec's contract with EcoCortec, Cortec's contracts with its customers, and Cortec's contracts with its distributors by improperly calling" the Loan to construct the EcoCortec facility. (Compl. ¶ 67.) In the alternative, Cortec alleges

that Erste Bank AG interfered "by instructing [ESB] to improperly call" the Loan Agreement. (Compl. ¶ 68.) In the second cause of action, Cortec asserts that Erste Bank AG interfered with the business relationship between Cortec and EcoCortec, the business relationship between Cortec and its customers, and the business relationship between Cortec and its distributors (Compl. ¶¶ 74-75).

Other claims assert alternative agency theories. In the third cause of action, Cortec asserts that "[ESB] serves as the actual agent of Erste Bank AG" and that "[ESB] entered into the loan agreement with EcoCortec in its capacity as an actual agent of Erste Bank AG." (Compl. ¶¶ 79, 81.) In the fourth cause of action, Cortec asserts that Miksic and EcoCortec "reasonably relied on [ESB's] appearance of authority in deciding to execute" the Loan Agreement with ESB. (Compl. ¶ 85). In the fifth cause of action, Cortec appears to assert an additional claim for implied or ostensible agency. Cortec claims that "[b]ecause of the nature of the transaction at issue, Erste Bank AG gave implied authority to its agent [ESB] to enter into the Contract on a Long Term Loan." (Compl. ¶ 90.)

In the sixth cause of action, Cortec seeks a declaratory judgment, asserting that "[a] justiciable controversy presently exists between the parties regarding Erste Bank AG's ability to recover from Cortec" under the Surety Agreement, though Erste Bank is not a party to that Agreement and the Complaint does not allege that it ever sought to recover under it. (Compl. ¶ 97.)

## ARGUMENT

"In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court's function is to assess the legal sufficiency of the complaint rather than to weigh the evidence that might be presented at trial." Chang v. Gordon, No. 96 Civ. 0152 (JFK),

1997 WL 563288, at *6 (S.D.N.Y. Sept. 8, 1997). "[T]he court must accept all of plaintiff's well-pleaded allegations and all reasonable inferences therefrom." Chase Manhattan Bank, N.A. v. Fidata Corp., 700 F. Supp. 1252, 1257 (S.D.N.Y. 1988) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)). However, a "complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal citations omitted). In determining the adequacy of a claim under Rule 12(b)(6), a district court may consider documents integral to the Complaint even if not attached to the pleading. See Cortec, supra. Where a written document contradicts an allegation in the complaint, a court must rely on the written document. Rapoport, 88 F. Supp. 2d at 184 (the documents control to the extent they contradict the allegations of the complaint); Cohen v. Acorn Int'l Ltd., 944 F. Supp. 204, 207 (S.D.N.Y. 1996) ("[T]o the extent that the written document contradicts the allegations in the complaint, the former controls.") (internal citations omitted).

## I. THE COURT SHOULD DISMISS CORTEC'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ON THE BASIS THAT CORTEC HAS FAILED TO PROPERLY ALLEGE THE ELEMENTS OF THE CLAIM

Cortec's claim for tortious interference with contract fails because it is based on conclusory allegations that are not supported by the documentary evidence and does not sufficiently allege the required elements of the claim. To plead a tortious interference with contract claim, the plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual

breach of the contract; and (5) damages resulting therefrom." Kirch v. Liberty Media Corp, 449 F.3d 388, 401 (2d Cir. 2006) (internal citations omitted).

The second element of this claim requires that Erste Bank AG had knowledge of the contract at issue. The Complaint contains only conclusory allegations that Erste Bank AG had knowledge of the contract between EcoCortec and Cortec, the contracts between Cortec and its customers, and the contracts between Cortec and its distributors. (Compl. ¶ 66). These conclusory allegations, without more, are insufficient to survive a motion to dismiss. De Jesus, 87 F.3d at 70. Since Cortec does not, and cannot, claim that Cortec or EcoCortec had contact with anyone employed by Erste Bank AG during the time leading up to the execution of the Loan Agreement between ESB and EcoCortec, the only way that Cortec can claim that Erste Bank AG had knowledge of the contracts between Cortec and third parties is through a purported agency relationship between Erste Bank AG and ESB.

Therefore, Cortec's claim for tortious interference with contract relies on a finding that ESB acted as an agent for Erste Bank AG. However, as set forth more fully in Section III of this brief, Cortec's allegations fail to establish that ESB was acting as an actual, apparent or implied agent on behalf of Erste Bank AG. Without establishing an agency relationship Cortec has failed to properly allege Erste Bank AG's knowledge of the contracts, a necessary element of a claim for tortious interference with contract. Martian Entm't, LLC v. Harris, No. 600384/06, 2006 WL 2167178, at *7 (N.Y. Sup. Ct., July 5, 2006) ("Without allegations of breach and knowledge, plaintiff's tortious interference claim is defective on its face, and must be dismissed.").

Moreover, Cortec is unable to show that Erste Bank procured a breach of Cortec's contracts with third parties, the third required element of the claim. In the Complaint, Cortec alleges that "Erste Bank AG intentionally interfered with Cortec's contract with EcoCortec,

Cortec's contracts with its customers, and Cortec's contracts with its distributors by improperly calling the Contract on a Long Term Loan." (Compl. ¶ 67.) Yet, the documentary evidence clearly establishes that ESB signed the Termination Notice in its own name. This allegation is contradicted by the clear documentary evidence and therefore should not be relied upon. See Rapoport, 88 F. Supp. 2d at 184; Cohen, 944 F. Supp. at 207.

Cortec pleads in the alternative that Erste Bank AG instructed ESB to terminate the Loan Agreement. (Compl. ¶ 68.) This alternative claim fails because Cortec alleges no facts to support this conclusory allegation. De Jesus, 87 F.3d at 70.

Next, to survive a motion to dismiss for failure to state a claim for tortious interference with contract, Cortec must show that there has been an actual breach of a contract with a third party. "To allege a breach of contract, the complaint must set forth the terms of the agreement, either expressly referencing it or attaching a copy of it." Martian Entm't, 2006 WL 2167178, at *7 ("[The amended complaint] does not expressly reference any provisions of such an alleged agreement, nor is a copy attached. In fact, plaintiff never alleges that its 'co-production arrangement' with Plus Entertainment was breached in any way. Thus, it fails to state a claim for tortious interference with contract."). Failure to properly allege a breach of contract with a third party will result in the dismissal of the cause of action. Kirch. 449 F.3d at 401. Here, Plaintiff fails to allege actual breach. The Complaint does not identify any provisions of a contract that was breached and Plaintiff fails to attach any such contract to its Complaint. Thus, the first cause of action must be dismissed.