## II. THE COURT SHOULD DISMISS CORTEC'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ON THE BASIS THAT THE COMPLAINT FAILS TO STATE A CLAIM

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference cause injury to the relationship." Kirch, 449 F.3d at 400 (internal citations omitted).

Again, as with the first claim, the Complaint fails to properly allege that Erste Bank AG had any knowledge of Cortec's relationships with third parties. In the absence of such allegations, Cortec cannot sufficiently allege that Erste Bank AG intentionally interfered with those relationships, a required element of the claim. Kirch, 449 F.3d at 400.

Moreover, Cortec alleges that "Erste Bank AG interfered with the business relationship between Cortec and EcoCortec, the business relationship between Cortec and its customers, and the business relationship between Cortec and its distributors by improperly calling the Contract on a Long Term Loan." (Compl. ¶ 74.) As discussed above, this allegation is contradicted by the Termination Notice that is signed by ESB, not Erste Bank AG. Rapoport, 88 F. Supp. 2d at 184. Because Erste Bank AG was not a party to the Loan Agreement, it had no power to terminate the loan. Cortec's allegation that Erste Bank AG instructed ESB to terminate the Loan Agreement is a purely conclusory, unsupported allegation. De Jesus, 87 F.3d at 70.

Furthermore, Cortec has failed to allege facts showing that Erste Bank AG "acted solely out of malice, or used dishonest, unfair, or improper means," a required element of the claim. See Kirch, 449 F.3d at 400; see also Besicorp Ltd. v. Kahn, 290 A.D.2d 147, 150, 736 N.Y.S.2d

708, 711 (3d Dep't. 2002). To survive a motion to dismiss, Plaintiff must allege "culpable, nonlawful conduct by defendants which is generally criminal in nature or independently tortious . . . [i]f unable to sustain that showing, plaintiff had to demonstrate that defendants engaged in conduct for the sole purpose of inflicting intentional harm." Lerwick v. Kelsey, 24 A.D.3d 918, 919, 806 N.Y.S.2d 732, 733-34 (3d Dep't. 2005) (internal citations omitted).

The Complaint does not contain sufficient allegations to survive a motion to dismiss. In its Complaint, Cortec alleges no facts to support its purely conclusory allegations that "Erste Bank AG used dishonest, unfair, improper, and/or wrongful means to interfere with the business relationship between EcoCortec and Cortec, between Cortec and its customers, and between Cortec and its distributors." (Compl. ¶ 76.) The Complaint nowhere alleges that Erste Bank AG acted with malice or with the sole purpose of inflicting intentional harm. Accordingly, the second cause of action must be dismissed.

### III. THE COURT SHOULD DISMISS CORTEC'S UNSUPPORTED CLAIMS FOR ACTUAL, APPARENT AND IMPLIED/OSTENSIBLE AGENCY

Cortec's conclusory claims for actual agency (Count Three), apparent agency (Count Four) and implied/ostensible Agency (Count Five) are rebutted by the complaint and the actual Loan Agreement. It is well settled that an agency relationship cannot be created merely by the actions of one alleged to be an agent. Rather, there must be conduct on the part of the principal that grants the agent authority or cloaks the agent with apparent authority. See Atlantic Container Line AB v. Aref Hassan Abul, Inc., 281 F. Supp. 2d 457, 462-63 (N.D.N.Y. 2003). Where a party relies to its detriment on an agent that lacks authority, no cause of action against the principal exists. See Marvullo v. Gruner & Jahr AG & Co., No. 98 CIV. 5000 (RLC), 2001 WL 40772, at * 4, FN 9 (S.D.N.Y. Jan. 17, 2001) ("Plaintiff's complaint is also devoid of facts from which the court could infer parent liability or an actual or apparent agency relationship").

**A. Cortec Lacks Standing To Maintain Any Action Arising Out of An Alleged Breach of a Contract To Which It Is Not A Party**

As an initial matter, Cortec's claims should be dismissed because it lacks standing to maintain an action against Erste Bank AG on the basis of any claim arising from an alleged breach of the Loan Agreement. See Caravella v. City of New York, 79 Fed. Appx. 452, No. 03-7119, 2003 WL 22441790 (2d Cir. Oct. 27, 2003) ("Plaintiff also has no individual standing to bring a breach of contract claim as he was not a party to the construction contract"). The Loan Agreement was clearly between ESB and EcoCortec. Cortec, despite promising to guarantee EcoCortec's loans, was not a party to the agreement and thus would lack standing to maintain Counts Three, Four and Five against ESB, much less against Erste Bank AG.

**B. Both The Loan Agreement and The Complaint Fail To Establish A Principal-Agent Relationship Between Erste Bank AG and ESB**

*1. The Loan Agreement*

In any event, Cortec's claim of agency is unsupported by the actual Loan Agreement and should be dismissed. Even if a principal-agent relationship has existed between ESB and Erste Bank AG – and none existed – "the facts indicate that [EcoCortec] elected to contract with and hold [ESB] liable on the contract, not [Erste Bank AG]." See Soberay Mach. & Equipment Co. v. MRF Ltd., Inc., 181 F. 3d 759, 767 (6th Cir. 1999); see also Renel Const. Inc. v. Brooklyn Co-op Meet Distribution Center Inc., 59 A.D.2d 391, 394, 399 N.Y.S.2d 429, 431 (1st Dep't 1977) (Plaintiff's action against principal was dismissed because the contract on its face was between the agent, in its own interest, and the third party), aff'd, Depot Const. Corp. v. City of New York, 46 N.Y.2d 859, 414 N.Y.S.2d 511 (1979); Brown v. North Am. Energy Programs, Inc., No. 46749, 1983 WL 2772, at *2 (Ohio App. Nov. 17, 1983) (finding that "where a third party contracts with an agent alone, the party cannot maintain an action against the agent's principal").

Clearly, parties to a contract need only to look to the four corners of the agreement to determine obligations. Here, "[t]he very document [plaintiff] relies upon negates" its claims of actual, apparent and implied agency. See Crystal v. Foy, 562 F. Supp. 422, 427 (S.D.N.Y. 1983); Rapoport, 88 F.Supp. 2d at 187. EcoCortec freely entered into a contract with ESB, the only entity against which it may assert any claims related to breach of contract.

### 2. The Complaint

Additionally, Cortec's complaint fails to allege sufficient facts to sustain claims of actual, apparent and implied agency and should be dismissed accordingly. See Straker v. Metropolitan Transit Authority, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) (dismissing complaint on the grounds that it merely stated "conclusory allegations" and failed to allege facts to support its claims); D'Accord Financial Services, Inc. v. Metsa-Serla Oy, No. 98 Civ. 5847 (DLC), 1999 WL 58916, at *3 (S.D.N.Y. Feb. 8, 1999) (same).

Here, Cortec erroneously points to an "Annual Report and other promotional materials" to allege that Erste Bank AG holds ESB out as its agent. (Compl. ¶42). Cortec further alleges that Erste Bank AG "holds [ESB] out to the public as a member of the 'Erste Bank Group,' as its branch bank in Croatia, and as its agent." (Compl. ¶43.) These allegations are flawed and insufficient to sustain a cause of action against Erste Bank AG. Cortec's characterization of ESB as Erste Bank AG's agent is purely conclusory; the complaint never specifies how Erste Bank AG is holding ESB out as an agent. Moreover, holding oneself out to be a *part of a group* does not establish principal-agent relationship among the group members. See, e.g., Howard v. Klynveld Peat Marwick Goerdeler, 977 F.Supp. 654, 662-63 (S.D.N.Y. 1997), aff'd, 173 F.3d 844, 1999 WL 265022 (2d Cir. 1999) (defendant's motion to dismiss granted because "public

13

relations materials suggest[ing that KPMG] is a global firm or an international network of member firms" was insufficient to establish a relationship between the entities).

### C. Cortec Fails to Establish That Erste Bank AG Vested ESB With Actual Authority to Act on its Behalf

Cortec's allegations likewise fail to support its claim that Erste Bank AG vested ESB with actual authority to enter into the Loan Agreement on its behalf. See Straker, 333 F. Supp. 2d at 102 (plaintiff's complaint was dismissed on the grounds that it merely stated "conclusory allegations" and failed to allege facts to support its claims).

It is well settled that an agent is vested with actual authority *only* when he engages in an action for the benefit of a principal at the latter's *expressed* request. Peltz v. SHB Commodities, Inc., 115 F. 3d 1082, 1088 (2d Cir. 1997) ("[a]ctual authority is created by direct manifestations from the principal to the agent") (internal quotations omitted); Atlantic Container, 281 F. Supp. 2d at 462-63; Restatement (Third) of Agency §2.01 rev. (2005). There is no agency relationship where a party engages in activity on its own account. Atlantic Container, 281 F. Supp. 2d at 463 (no actual agency relationship existed where the alleged agent negotiated a transaction on his own behalf); Marvullo, 2001 WL 40772, at * 4, n.9; Church v. Schaefer, No. 74 Civ. 5247 (JMC), 1976 WL 1203, at *3 (S.D.N.Y. Jan 5, 1976) (plaintiff's complaint is "completely devoid of specific facts tending to show that an agent was performing any acts in New York for Head's benefit or at his request[;] the requisite agency relationship has not been established").

In this case, ESB entered into the Loan Agreement with EcoCortec on its own behalf and for its own benefit, disbursed funds to EcoCortec, and thereafter called due the loan it had extended to EcoCortec. Neither the Loan Agreement nor the related agreements even mention Erste Bank AG, much less identify it as a party or principal.

14

## D. Cortec Fails to Establish That Erste Bank AG Vested ESB With Apparent Authority to Act on its Behalf

Cortec's argument that Erste Bank AG vested ESB with apparent authority to enter into the Loan Agreement on its behalf is also baseless. An agent has apparent authority *only* in circumstances in which a principal expressly indicates, to a third party, that the agent will act on his behalf. Fletcher v. Atex, Inc., 68 F.3d 1451, 1462 (2d Cir. 1995) ("apparent authority is dependant upon verbal or other acts *by a principal* which reasonably give an appearance of authority to conduct the transaction") (internal citation omitted); Atlantic Container, 281 F. Supp. 2d at 463; Restatement (Third) of Agency §2.03 rev. (2005).

Cortec fails to assert facts showing that Erste Bank AG communicated ESB's supposed agency to EcoCortec or any of its board members, including Boris Miksic. Rather, the Complaint alleges that in negotiating the Loan Agreement, ESB communicated with EcoCortec.

## E. Cortec Fails to Establish That Erste Bank AG Vested ESB With Implied or Ostensible Authority to Act on its Behalf

Cortec's argument that Erste Bank AG vested ESB with implied or ostensible authority to enter into the Loan Agreement on its behalf is wholly without merit. Implied agency is simply a form of actual agency where the scope of the agent's authority is expanded through implication: "where the circumstances suggest that the principal and agent intended to create such a relationship." Martha Stewart Living Omnimedia LLC v. Beers Flower Shop, Inc., No. 98 Civ. 3398 (RWS), 1998 WL 646648, at *6 (S.D.N.Y. Sept. 21, 1998); see also Gumpert v. Bon Ami Company, 251 F.2d 735, 738 (2d Cir. 1958) ("Inherent or incidental authority is a species of actual authority").

The complaint does not allege any circumstances surrounding the Loan Agreement that would support implied agency. Moreover, even assuming arguendo that the circumstances gave

15

rise to the appearance of an agency relationship – which it did not – EcoCortec had a duty to

make "reasonable inquiries as to the ostensible agent's actual authority," which it fails to allege.

See Peoples Westchester Sav. Bank v. Ganc, 705 F.Supp. 164, 169 (S.D.N.Y. 1989).

## IV. THE COURT SHOULD DISMISS THE ACTION ON THE BASIS OF THE EXCLUSIVE JURISDICTION OF THE CROATIAN COURT AS STIPULATED IN BOTH THE LOAN AND SURETY AGREEMENTS

Even if there were any basis for any claim against Erste Bank AG – and there is not – the

action should be dismissed because the parties to the Loan Agreement and Surety Agreement

explicitly agreed to litigate any disputes in Croatia, under Croatian law. See Čiček Decl. Exhibit

F (Surety Agreement, Article 10) ("In case of dispute arising from the application of this

Agreement, the actual competent court in Zagreb shall have the territorial jurisdiction. The

contracting parties agree Croatian law will be the governing law."). Thus, this court must

enforce the forum selection provisions of the surety and loan agreements. Sterling Nat'l Bank v.

Eastern Shipping Worldwide, Inc., 35 A.D.3d 222, 826 N.Y.S.2d 235 (1st Dep't 2006) ("it is

well-settled policy of the courts of this State to enforce contractual provisions for choice of law

and selection of a forum for litigation . . . [f]orum selection clauses, which are prima facie valid

are enforced because they provide certainty and predictability in the resolution of disputes.")

(internal citations omitted).

### A. The Forum Selection Clause Clearly Vests Croatian Courts With Exclusive Jurisdiction Over the Cause of Action

A forum selection clause is prima facie mandatory if it "plainly indicates 'the parties'

intent to make jurisdiction exclusive.'" Direct Mail Prod. Serv. Ltd. v. MBNA Corp., No. 99

Civ. 10550 (SHS), 2000 WL 1277597, at *3 (S.D.N.Y. Sept. 7, 2000) (quoting John Boutari &

Son v. Attiki Importers, 22 F.3d 51, 52-53 (2d Cir. 1994)). A mandatory forum selection clause

"revokes jurisdiction from all forums except those specifically identified in the clause." Albany

16

<u>Ins. Co. v. Banco Mexicano, S.A.</u>, No. 96 Civ 9473 DAB, 1998 WL 730337, at *3 (S.D.N.Y. Oct. 19, 1998).

The forum selection clause in the Loan Agreement is mandatory, as it plainly indicates the parties' intent to subject themselves to the exclusive jurisdiction of the Croatian court. It states, in pertinent part: "In case of dispute, the court in the place of the Bank's [ESB's] headquarters [or, registered office] will be *the* competent court." <u>See</u> Čiček Decl. Exhibit D (Loan Agreement ¶ 14) (emphasis added).

### B. <u>Enforcement of the Forum Selection Clause is Both Reasonable and Just</u>

The United States Supreme Court has long recognized that "[i]n disputes where the underlying transaction is fundamentally international ... forum selection clauses are presumptively valid and should be enforced unless enforcement is 'unreasonable' under the circumstances." <u>Albany Ins. Co.</u>, 1998 WL 730337, at *4. "The party objecting to the forum selection clause bears a heavy burden of showing the clause's unreasonableness." <u>Id.</u> In this case, there is nothing unreasonable about two Croatian entities agreeing to litigate in Croatia any dispute concerning a Croatian agreement to be performed in Croatia.

### C. <u>Erste Bank AG May Invoke the Forum Selection Clause As A Non-Party To The Original Agreement</u>

A non-party may invoke a forum selection clause despite not being a "signatory to the [a]greement containing the clause" if that non-party is "closely related" to either of the contracting parties. <u>Direct Mail</u>, 2000 WL 1277597, at *3. Specifically, "[t]he relationship between the non-party and the signatory must be sufficiently close so that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound." <u>Id.</u>

17

Here, the Defendant may invoke the forum selection clause even though it was not a signatory to the underlying Loan Agreement. It may do so, because it is affiliated with one of the signatories, ESB. Plaintiff can scarcely object, as it is seeking to hold Erste Bank AG liable as a party to the agreement.

## D. Cortec Is Bound By the Forum Selection Clause In The Loan Agreement And The Surety Agreement

Cortec is bound by the forum selection clause despite not being a party to the original Loan Agreement. A non-party is bound by a forum selection clause despite not being a signatory to the underlying agreement containing the clause if that non-party is "closely related" to the dispute, "such that it becomes 'foreseeable' that it will be bound." See Rohrbaugh v. U.S. Mgmt, Inc., No. 05-CV-3486 (SLT) (RML), 2007 WL 1965417, *4 (E.D.N.Y. July 2, 2007); Quebecor World (USA), Inc. v. Harsha Associates, L.L.C., 455 F. Supp. 2d 236, 254 (W.D.N.Y. 2006) ("it is well established that a range of transaction participants, parties and non-parties, should benefit from *and be subject to* forum selection clauses") (emphasis added); Cuno, Inc. v. Hayward Indust. Products Inc., No. 03 Civ. 3076 (MBM), 2005 WL 1123877, *6 (S.D.N.Y. May 10, 2005). Specifically, "[a] non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." Rohrbaugh, 2007 WL 1965417 at *4 (internal citation omitted).

Moreover, the parties expressly agreed that the Surety Agreement and the Loan Agreement are integrated. See Čiček Decl. Exhibit F (Surety Agreement, Article 8) ("The contracting parties mutually determine that this Agreement is considered an integral part of the [Loan] Agreement"). Thus, Cortec is bound by the forum selection clause in the Loan Agreement. See Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 233 (2d

18

Cir. 1991) ("instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together").

In any event, Cortec is itself a party to a corresponding forum selection provision in the Surety Agreement executed as part of the Loan Agreement. See Čiček Decl. Exhibit F (Surety Agreement, Articles 2, 3 and 10).

### E. The Scope Of the Forum Selection Clause Validly Encompasses Tort Actions Arising Out Of The Agreement

A forum selection clause governs tort claims that are related to the agreement containing the clause. Korean Press Agency v. Yonhap News Agency, 421 F. Supp. 2d 775, 781 (S.D.N.Y. 2006). This Court has recognized that a "contractually-based forum selection clause will also encompass tort claims" if the party invoking the clause shows that, as here, "the tort claims ultimately depend on the existence of a contractual relationship between the parties" or that "the tort claims involve the same operative facts as a parallel claim for breach of contract." See id.; see also Brennen v. Phyto-Riker Pharmaceuticals, Ltd., No. 01 Civ. 11815 (DLC), 2002 WL 1349742, at *4 (S.D.N.Y. June 20, 2002).

### V. THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*

Even in the absence of a forum selection clause, this action should be dismissed pursuant to the doctrine of *forum non conveniens.* Plaintiff is not entitled to any deference for his choice of a New York forum for a suit over alleged conduct in Croatia; and both the "private interest" and "public interest" factors to be weighed under a *forum non conveniens* analysis decidedly favor litigation in Croatia. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981); Madalynn Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 237-38 (2d Cir. 2004).

19

## A. **Plaintiff's Choice of Forum is Not Entitled to Deference**

Plaintiff's choice to sue Erste Bank AG in New York is not entitled to any substantial deference. Neither Plaintiff nor the transactions and conduct at issue relate to this forum. Plaintiff, a Minnesota corporation, purposely and actively sought to involve itself in international business (specifically guaranteeing a development project in a parcel of real property in Croatia) and the loans and the calling of those loans took place in that foreign country. Madalynn Carey, 370 F.3d at 237 (the court recognized that "diminished weight [is] accorded a plaintiff's choice of forum where the plaintiff has actively sought international business and the cause of action does not have significant ties to the plaintiff's home forum"). When Cortec guaranteed the loans of its Croatian sister corporation, which further secured the loan with a mortgage on the Croatian parcel, Cortec had good reason to foresee being subject to the jurisdiction of Croatian courts as evidenced by its execution of the forum selection clause. Id. at 238 (transactions pertaining to real property "reasonably give rise to the expectation on all sides that any litigation arising from them will be conducted in [the location of the real property]").

## B. **Croatia Is An Adequate Alternative Forum To Adjudicate This Matter**

Dismissal on the ground of *forum non conveniens* is appropriate where there is an "adequate alternative forum" in which the plaintiff can bring suit. See Piper, 454 U.S. at 254 n.22.; Madalynn Carey, 370 F.3d at 237; Blimpie Int'l, Inc. v. ICA Menyforetagen AB, No. 96 Civ. 3082 (RWS), 1997 U.S. Dist. LEXIS 3950, at *10-11, 13-14 (S.D.N.Y. March 21, 1997). Here, Croatia is not only an adequate forum; it is the only forum competent to adjudicate the issues here, given the forum selection provisions in both the loan[2] and surety agreements and the

---

[2]    The forum selection provision provides, in pertinent part: "In case of dispute, the court in the place of the Bank's [ESB's] headquarters [or, registered office] will be the competent court."

20

location of the mortgaged property in Croatia. Indeed, the actual party to the loan at issue,

EcoCortec (Plaintiff's affiliate) has already availed itself of the Croatian court system by

bringing suit against ESB in Rijeka, Croatia. (Compl. ¶7).

## C. The Private Interest Factors Decidedly Favor Croatia As A Forum

The "private interest" factors relevant to a *forum non conveniens* motion overwhelmingly

favor litigation in Croatia, not New York. These factors include the "ease of access" to

evidence; the "availability of compulsory process" to compel the attendance of unwilling

witnesses; the cost of willing witnesses' appearances; and any other factor that might make the

trial more efficient and less expensive. Madalynn Carey, 370 F.3d at 237 (citing Gulf Oil Corp.

v. Gilbert, 330 U.S. 501, 508 (1947)). In considering these factors, the Court should compare the

relative ease or hardship for each party to litigate in each forum. See id. at 237.

Here, litigation in New York will be a hardship for all parties – whereas the presence of

most of the relevant evidence in Croatia will make litigation there less burdensome on all. The

Plaintiff is a Minnesota corporation without a close connection to this forum. The Defendant is

an Austrian bank; it has a New York office, but even Plaintiff does not claim that the New York

office had any connection to ESB's loan to EcoCortec or to Cortec's guarantee to ESB.

Additionally, compelling witnesses to participate is not viable, as no witnesses relevant to

the case reside in the United States, much less New York, and these foreign witnesses are not

subject to this Court's subpoena power. Blimpie Int'l, 1997 U.S. Dist. LEXIS 3950, at *21

("These non-party witnesses live and work in Sweden, and this Court lacks subpoena power over

---

Čiček Decl. Exhibit D (Loan Agreement ¶14). Under Croatian laws parties may agree on the
venue of the competent court to exercise jurisdiction over litigation arising out of the loan
agreement. See Article 70 of the Croatian Law on Civil Procedure ("Article 70"), attached to
Čiček Decl. as Exhibit O. Article 70 provides that such provisions are enforceable if in writing.
Id.

them. In contrast, a Swedish court would be able to compel the testimony of these non-party witnesses in a Swedish proceeding."). In addition, the cost to any witness willing to travel to New York from Croatia would be considerable. See, e.g., Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1001 (2d Cir. 1993) ("The cost of bringing witnesses [from Australia] to the United States for trial, assuming they are willing would be prohibitive."). Of obvious relevance to this case are the Croatian individuals who negotiated and signed the Loan Agreement and related documents at issue – including representatives of EcoCortec, ESB, and the Croatian city of Beli Manastir, which signed the Security Agreement. See Čiček Decl. Exhibit H (Security Agreement).

Aside from the problems involved with securing witnesses, the documents relevant to plaintiff's allegations are located in Croatia and written in the Croatian language. Some of the core transactional documents have been translated into English, but others have not, and would need to be translated at considerable cost.

**D.  The Public Interest Factors Decidedly Favor Croatia As A Forum**

The "public interest" factors relevant to a *forum non conveniens* analysis also heavily weigh in favor of trial in Croatia. These factors include: the administrative difficulties that may result if the case is added to an already congested docket; the imposition of the burden of jury duty on the citizens of a community to which the matter has *no* connection; the inability of people who *do* have a connection to the matter to observe the progress and the outcome of the dispute; and the preference for holding the trial of a matter in the forum whose laws will govern the outcome, rather than asking a district court to apply unfamiliar law. See Madalynn Carey, 370 F.3d at 237 (citing Gilbert, 330 U.S. at 508-509); Blimpie Int'l, 1997 U.S. Dist. LEXIS 3950, at *12-13. It also is preferable to litigate a dispute in the forum whose laws will govern

the case, rather than to ask a court to interpret and apply foreign law.  See Blimpie Int'l, 1997

U.S. Dist. LEXIS 3950, at *25.

     In addition, the U.S. District Court for the Southern District of New York is an active

court with a full docket.  There is no reason to require this court to divert its limited time and

resources to the disposition of a Croatian controversy that has no connection to New York and

only the most tenuous connection to the United States.

## VI. THE COURT SHOULD DISMISS THIS ACTION BECAUSE ESB AND ECOCORTEC ARE INDISPENSABLE PARTIES THAT CANNOT BE JOINED AS DEFENDANTS IN THIS FORUM

     This action should be dismissed for the further reason that ESB and EcoCortec are

indispensable parties that cannot be joined as defendants in this forum.

### A. Erste Bank Croatia and EcoCortec May Not Be Feasibly Joined Under Rule 19(a)

     In considering whether an entity is a "necessary" party to litigation under Fed. R. Civ. P.

19(a), this Court should consider (1) whether the failure to join an absent party will result in an

incomplete relief to the existing parties, or (2) "if the present suit could have a preclusive effect

on future litigation involving the absent party."  Fed. R. Civ. P. 19(a)(1)-(2); Nowakowski v.

Kohlberg, No. 89 Civ. 5621, 1991 WL 3028, at *3 (S.D.N.Y. January 8, 1991).  This test may be

satisfied if "the absent party is the real party in interest."  Nowakowski, 1991 WL 3028, at *3.

Once this has been established, this Court must determine that joinder of the absent party is

feasible.  Id.  Joinder is feasible if "the party is subject to service of process and ... joinder of the

party will not deprive the court of subject matter jurisdiction."  Id.

     ESB is a necessary party under Rule 19(a)(2) because it has an interest that it will be

unable to protect unless it is joined.  ESB is the party (and beneficiary) to the guarantee Cortec

granted with respect to EcoCortec's debt to ESB; Cortec seeks a declaration that it owes no money under the guarantee to ESB.

EcoCortec also is a necessary party under Rule 19(a)(2), because, as an absent party, they will "leave any of the persons already parties [to the litigation] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(2). The judgment sought by Cortec assumes that EcoCortec is not in breach of its Loan Agreement with ESB, a matter that is currently being litigated in Croatia.

### B. The Action Should Be Dismissed Because ESB and EcoCortec Are Indispensable Parties Under Rule 19(b) and Joinder Is Not Feasible

If joinder is not feasible and the absent party is "indispensable," the court may dismiss the action. An indispensable party is one who is deemed necessary under subsection (a), for whom joinder is not feasible and whose absence prejudices either the absent or the existing parties. Fed. R. Civ. P. 19(b); Nowakowski, 1991 WL 3028, at *3.

This action should be dismissed because ESB and EcoCortec are indispensable parties and neither may feasibly be joined to the action. Both entities are corporations organized under Croatian law and located in Croatia, well outside this court's jurisdiction. In addition, the absence of either ESB or EcoCortec significantly prejudices both these absent parties and the existing parties to the action. The ability for the actual parties to the loan to litigate in Croatia, where all relevant actions took place, leaves the court little reason to avoid dismissing for lack of an alternative forum, as demonstrated by the pending action between EcoCortec and ESB. Furthermore, it is unlikely that an adequate judgment could be rendered without either of the real parties in interest being joined to the action.

Finally, even if there were a basis for any claim against Erste Bank AG, at a very minimum, the action should be stayed, as there is a prior action pending in the Commercial Court

24

in Rijeka.  See Čiček Decl. Exhibit M.  It is well settled that "[a] court has inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." Evergreen Marine Corp. v. Welgrow Intern. Inc., 954 F. Supp. 101, 103 (S.D.N.Y. 1997).

**CONCLUSION**

For the foregoing reasons, Erste Bank AG respectfully requests that the Court dismiss all of the claims of the Complaint with prejudice.

Dated: New York, New York
      August 31, 2007

Respectfully submitted,

SIDLEY AUSTIN LLP

By: _James D. Arden_
      James D. Arden (JA 8779)
787 Seventh Avenue
New York, New York  10019
(212) 839-5300

*Attorneys for Defendant*
*Erste Bank der oesterreichischen*
*Sparkassen AG*

25

## CERTIFICATE OF SERVICE

I, James D. Arden, hereby certify that on the 31st day of August 2007, I caused

the foregoing (i) Notice of Motion to Dismiss the Complaint; (ii) Memorandum of Law in

Support of the Motion of Defendant Erste Bank der oesterreichischen Sparkassen AG to Dismiss

the Complaint, and (iii) Declaration of Josip Čiček with exhibits annexed thereto to be filed and

served via the Court's ECF system and to be served via FedEx upon the following counsel:

> Ronald D. Degen
> O'Rourke & Degen, PLLC
> 225 Broadway, Suite 715
> New York, New York 10007
>
>        AND
>
> Kirk W. Reilly
> Jason J. Stover
> Gray, Plant, Mooty, Mooty & Bennett, P.A.
> 500 IDS Center
> 80 South Eighth Street
> Minneapolis, MN 55402

James D. Arden (JA 8779)