# EXHIBIT H



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Eric Brown, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the attached document "Security Agreement", from Croation to English.

Eric Brown

Sworn to before me this

30th day of August, 2007

Signature, Notary Public

> HEATHER BOSLEY
> Notary Public - State of New York
> No. 01BO6116856
> Qualified in NEW YORK County
> My Commission Expires OCT 12, 2008

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

TPT 077 rev. 1 20060612

**ERSTE & STEIERMÄRKISCHE BANK d.d.,** Rijeka, Jadranski Trg 3a, represented by the Director of the Economic Sector, Marko Krajina and the Director of the Commercial Center Osijek, Lidija Balog – acting as the creditor and the insurance creditor (hereinafter: the Bank)-----------------------------------------------------------------------

and----------------------------------------------------------------------------------------------------------------------------

**ECOCORTEC d.o.o.** Osijek, Slavonska 1, represented by the Member of the Management Board, Boris Mikšić, acting as the debtor and the insurance debtor (hereinafter: the Debtor)-- --------------------------------------------------

**THE CITY OF BELI MANASTIR,** Beli Manastir, Kralja Tomislava 53, represented by the Mayor, Davorin Bubalović, acting as the insurance debtor (hereinafter: the Insurance Debtor)-

conclude on 04/05/2006 (April the fifth, two thousand and six) an---------------------------------------------------

### AGREEMENT ON REVOLVING INDEBTEDNESS
### AND INSURANCE
### no. ES -297/06-1

#### Article 1 (the first)

1.1. Pursuant to the Decision of the Bank of 03/02/2006 (March the second, two thousand and six) the Bank shall grant loans, issue guarantees and letters of credit with deferred coverage and approve other advances from the Bank's registered object of business, in accordance with the Bank's business policies and principle of investment safety and the needs of the Debtor, up to the total amount of ---------------------------------------------------------------------------
-----------------------------------**EUR 3,000,000.00**-----------------------------------------------------------------------
-------------------------------------**(EUR three million)**--------------------------------------------- ------------------------

in HRK equivalent value according to the median exchange rate of the Bank on the day of payment.

1.2. Bank's claims from paragraph 1 of this article are being increased by the agreed interests, interest of the guarantee beneficiary, agreed interests for late payment, or the default interest if higher and fees and costs of either judicial or extrajudicial payment enforcement.------------ --------------------------------------------------------------------

1.3. The Debtor explicitly agrees that an excerpt from Bank's business records be evidence of the amount and maturity of Bank's claims from the previous paragraph.------------------------ ----------------------------------------------

#### Article 2 (the second)

2.1. The Bank and the Debtor shall conclude a special agreement for each individual legal affair, which will regulate its details, in accordance with the Bank's business policies and its capacities, up to the total amount from article 1 of this Agreement.--------------------------- -----------------------------------------------------------------------

2.2. The Bank shall conclude the special agreements pursuant to previous decisions made in accordance with the terms of its business policy and retains the right to accept or reject the Debtor's proposal to conclude any special agreement, and each special agreement shall form an integral part of this Agreement.-------------------------------------

#### Article 3 (the third)

3.1. Bank's claim from article 1 of this Agreement becomes due on the deadline determined in each individual agreement as well as in each individual issued letter of credit, i.e., on the date of guarantee redemption or on the date of termination of this Agreement **and at the latest by 12/31/2017** (December thirty-first, two thousand and seventeen).------------- --------------------------------------------------------------------------------------------

3.2. By signing this Agreement the Debtor states that it agrees that the Bank subsequently determine the amount of the claim up to the revolving amount in article 1 of this Agreement, as well as the date it becomes due, and that it irrevocably accepts the amount that will be stated in the possible motion for enforcement in accordance therewith.----

#### Article 4 (the fourth)

4.1. The Debtor undertakes to submit to the Bank a request for each individual legal affair in a timely and standard fashion.---------------------------------------------------------------------- --------------------------------------------------

4.2. The Debtor furthermore undertakes to orderly and timely fulfill the obligation arising from that Agreement, in accordance with each individual special agreement.----------------------------------------------------------------------------

4.3. The Bank can terminate this Agreement in case of non-compliance with the conditions from paragraph 2 of this article and other obligations from this Agreement.----------------------------------------------------------------------------------

4.4. In case of termination of the Agreement, all the Debtor's obligations arising from all individual agreements, issued guarantees, issued letters of credit and other guarantees become due as an obligation to provide 100% coverage for them.------------------------------------------------------------------------------------------------------------------

4.5. The provisions of the previous paragraphs are agreed on by the parties as an essential part of this Agreement. In that case [sic], the Bank is entitled to undertake all action related to the collection of all due amounts pursuant to all the collaterals at its disposal.----------------------------------------------------------------------------------------------------

## Article 5 (the fifth)

5.1. For the purpose of insuring the timely and orderly fulfillment of obligations arising from this Agreement, as well as from the individual agreements from article 1.-------------------------------------------------------------------------------
the Debtor provides the Bank with:------ ------------------------------------------------------------------------------------
- a statement in accordance with article 183 of the Enforcement Act----------------------------------------------------
- a mortgage of the construction right described in art. 6 of this Agreement----------------------------------------------
- the Insurance Debtor provides the Bank with:
- a mortgage of the real estate described in art. 6 of this Agreement----------------------------------------------------

5.2. By signing this Agreement, the Debtor gives an irrevocable order to the Bank to collect the due and unpaid amount from any and all of the Debtor's accounts held with the Bank, without any further requests and approvals, in case the Debtor does not fulfill the obligations arising from this Agreement. The Debtor furthermore authorizes the Bank to submit the order to other organizations that deal with payment operations in case it is unable to collect the debt from the accounts held with the Bank, for the purposes of collecting the due and unpaid debt of the Debtor towards the Bank. By signing this Agreement the Debtor authorizes organizations that deal with payment operations to execute the Bank's collection order by debiting all other accounts in case there are no funds for collection in the account stated in the order or if the funds are insufficient.------------------------------------------------------------------------

5.3. The Debtor undertakes to amend the used collaterals upon the Bank's request and submit additional collaterals. The Bank may, together with claims arising from this Agreement, also transfer the collaterals from this article to other third persons.----------------------------------------------------------------------------------------------------------

5.4. In case the Debtor arbitrarily and without the Bank's consent stops conducting payment operations via the Bank, despite the agreement on opening and managing the account concluded with the Bank, the Bank can immediately declare all claims from the Debtor pursuant to this Agreement due and undertake measures to collect the entire claim.-------------------------------------------------------------------------------------------------------------------

5.5. The Debtor and the Insurance Debtor undertake to insure the real estate from paragraph 1 of this article with the insurance company previously accepted by the Bank, designate the Bank as the beneficiary of the insurance policy, to renew the insurance on an annual basis and designate the Bank as the beneficiary of the insurance policy until all claims arising from this and each individual Special Agreement have been finally settled.-----------------------------------

5.6. In case the Debtor and the Insurance Debtor do not act according to paragraph 5 of this article, by signing this Agreement they irrevocably authorize the Bank to do so on their behalf and at their own expense.-----------------------

5.7. The contracting parties explicitly determine that the insurance cost from paragraph 5 of this article represents the Bank's claim within the meaning of article 1 of this Agreement.---- ------------------------------------------------------

## Article 6 (the sixth)

6.1. By signing this Agreement, the Debtor and the Insurance Debtor allow the Bank **to enter a pledge (mortgage)**, within the meaning of provisions of articles 263 and 269 of the Enforcement Act, of:------------------------------------
-the Insurance Debtor of the real estate entered in the land register of the Municipal Court in Beli Manastir **(Cadastral Municipality Beli Manastir, Land Register Folder 2073**, Cadastral Plot 3050/1, plough land in Ulica Bele Bartoka, 9836 square meters.---------------------------------------------------------------------------------------------------
-the Debtor in the **Land Register Folder 3407 - construction right** on the Cadastral Plot 3050/1 entered in the **Land Register Folder 2073, Cadastral Municipality Beli Manastir, for the purpose of insuring** the Bank's claim towards the Debtor which arises from this Agreement in the amount **of EUR 3,000,000.00 (EUR three million) in HRK equivalent value according to the median exchange rate of the Bank increased by** the agreed interest,

interest of the guarantee beneficiary, agreed interest on late payment or the default interests if higher, as well as the commissions, fees and costs of the payment enforcement procedure, whether judicial or extrajudicial (hereinafter: **the Real Estate**). -------------------------------------------------------------------------------------

6.2. The Debtor and the Insurance Debtor state that they agree that the pledge (mortgage) of the Real Estate and of the construction rights can be entered in the Land Register in favor of the Bank for the purpose of insuring the Bank's pecuniary claims from article 1 of this Agreement, directly and without any further approval.--------------------

### Article 7 (the seventh)

The Debtor and the Insurance Debtor state that the land register excerpts which form an integral part of this Agreement completely and truly reflect the factual and legal state of the Real Estate.------------------------------------------

### Article 8 (the eighth)

8.1. The parties agree that this Agreement has the power of an enforceable public notary document from article 25 and of the agreement pursuant to the provisions of the twenty seventh chapter of the Enforcement Act.------------------

**8.2. The Debtor and the Insurance Debtor agree that the Bank, acting as the Insurance Creditor, can directly and pursuant to this Agreement carry out the forcible enforcement by selling the Real Estate including the construction rights, after the Public Notary certifies the enforceability of this Agreement, for the purpose of collecting the claims it has against the Debtor.------------------------------------------------------------------------------------**

8.3. The Debtor and the Insurance Debtor explicitly agree that in case an enforcement procedure initiated by the Insurance Creditor is carried out in accordance with the applicable provisions of the Enforcement Act, the notary public document that will contain the creditor's statement on the termination of the agreement due to non-fulfillment of contractual obligations by the Debtor and the confirmation of the Public Notary of the inspection of the excerpts from the Bank's business records, shall represent a valid public document, in accordance with article 54 paragraph 4 of the Public Notary Act, which proves that a condition for terminating the agreement has been met and that the deadline for fulfillment of the contractual obligations by the debtor has expired. ------------------------------------------------

### Article 9 (the ninth)

9.1. The parties mutually determine that the value of the Real Estate amounts to EUR 424,000.00 (EUR four hundred and twenty four thousand) in HRK equivalent value.----------- -------------------------------------------------------------------

9.2. The contracting parties mutually determine that in case of a forcible sale of the Real Estate, it will be sold pursuant to the provisions of article 97 of the Enforcement Act.------ -------------------------------------------------------

### Article 10 (the tenth)

10.1 The Debtor explicitly agrees that the Insurance Creditor can undertake a direct and forcible enforcement pursuant to this Agreement and the excerpts from the business records over all of its accounts, movable and immovable assets and other material rights in case any obligation pursuant from this Agreement becomes due.--------

10.2. The Debtor authorizes the Bank to collect any due and unsettled claim arising from this Agreement, i.e., from the individual agreements, without any further approvals or consents, from any of its accounts held with the Bank.----

### Article 11 (the eleventh)

After settlement of all the obligations arising from this Agreement, the Bank undertakes to provide the Debtor and the Insurance Debtor with the canceling statement for the mortgage established by this Agreement.---------------------

### Article 12 (the twelfth)

By signing this Agreement, the Debtor and the Insurance Debtor explicitly agree that all letters sent by the Bank or Public Notary will be sent to the address stated in this Agreement and that the day the letter is postmarked will be considered the day of delivery, within the meaning of applicable provisions of the Civil Code and the Act on the Civil Procedure, unless the Debtor and the Insurance Debtor inform the Bank in writing of a change in address.-------

**Article 13 (the thirteenth)**

All costs related to the preparation and certification (solemnization), as well as the execution of this Agreement shall be borne by the Debtor. In case the Debtor does not settle the costs of this Agreement within three days of the date of the solemnization, the Bank is entitled to cover the cost on its behalf, in which case the Debtor irrevocably authorizes the Bank without further requests and approvals to collect the amount equal to the costs of solemnization from the funds deposited on any of its accounts held with the Bank, as well as on Debtor's other accounts held with the Bank or with another organization that deals with payment operations.-

**Article 14 (the fourteenth)**

This Agreement has been made in 6 (six) equally valid copies, 2 (two) for the Bank and 1 (one) each for the Debtor, the Insurance Debtor, the court and the Public Notary.------- ---------------------------------------------------------------

THE DEBTOR                                    THE BANK:

                                                        [signature]

_____          _____

[stamp:]
[logo]
ECOCORTEC d.o.o.
For production and trade
Slavonska 1, 31000 Osijek


THE INSURANCE DEBTOR

_____
[seal:]
REPUBLIC OF CROATIA, CITY OF BELI MANASTIR
CITY HALL, BELI MANASTIR
THE COUNTY OF OSIJEK AND BARANJA