# EXHIBIT M



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Eric Brown, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the attached document "RESOLUTION", from Croation to English.

_____
Eric Brown

Sworn to before me this
30th day of August, 2007

_____
Signature, Notary Public

HEATHER BOSLEY
Notary Public-State of New York
No. 01BO6116856
Qualified in NEW YORK County
My Commission Expires OCT 12, 2010

Stamp, Notary Public

TPT 077 rev. 1 20060612

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

02/07 2007 11:20 FAX 0038551320978         LAW OFFICE JAJAS&HODZIC                    005

[coat of arms]
REPUBLIC OF CROATIA
**COMMERCIAL COURT IN RIJEKA**

Docket no. X-P-406/2007-12

# RESOLUTION

The Commercial Court in Rijeka represented by judge Nada Maraš, acting as a sole judge in the civil proceedings of plaintiff ECOCORTEC d.o.o. BELI MANASTIR, INDUSTRIJSKA ZONA BB, represented by Domagoj Čajkovski, attorney from Rijeka, against defendant ERSTE & STEIERMARKISCHE BANK d.d., RIJEKA, JADRANSKI TRG 3, represented by Jasminka Hodžić and Katja Jajaš, attorneys from Rijeka, for declaratory judgment and payment related to motion for temporary injunction, on this day of June 27, 2007, outside the trial,

## resolved

To reject the following plaintiff's motion for temporary injunction:

"1. Temporary injunction is hereby ordered and the defendant is ordered to unfreeze (unblock) the assets on the plaintiff's giro account number 2402006-1100454053 in the amount of HRK 12,387,516.44 within 24 hours of delivering a copy of this resolution.

2. Temporary injunction is hereby ordered and the defendant is prohibited from freezing (blocking) the assets on the plaintiff's giro account number 2402006-1100454053 until the decision in this proceedings becomes final.

3. Temporary injunction is hereby ordered and the defendant is prohibited from undertaking enforcement actions arising from termination of the Agreement on long-term loan number 2402006 – 1031262160/51016105-5102937724 concluded on April 06, 2006 between Erste & Steiermarkische bank d.d. Rijeka and Ecocortec d.o.o. for production and trade Osijek.

4. This temporary injunction remains in force until a legally binding decision in this proceeding is reached."

Docket no. X-P-406/2007-12

## Exposition

In its lawsuit, the plaintiff claims that the parties concluded an Agreement on long-term loan on April 06, 2006 for the purposes of financing the construction of a biodegradable packaging plant in Beli Manastir. The plaintiff claims to have provided the defendant with collaterals – 5 blank promissory notes from Art. 183 of the Enforcement Act, a mortgage of real estate and that Boris Mikšić personally along with the Cortec Corporation from the USA guaranteed for the plaintiff, and that the plaintiff consented to and irrevocably authorized the defendant, to collect its claims from all the bank accounts held by the plaintiff with the defendant or with third banks. Plaintiff claims to have received from the defendant on March 20, 2007, that is before the defendant entirely fulfilled its obligation to provide a loan, a "Payment Request to the Borrower– Termination of the Loan," dated March 08, 2007, terminating on March 09, 2007 and requesting to return the amount of HRK 12,123,504.50 (equivalent value EUR 1,651,004.52) within 8 days. Plaintiff claims that the defendant did not state any reasons for terminating the Loan Agreement except for generally mentioning the provision of Art. 13 of the Agreement. Plaintiff claims that, since neither contractual nor legal reasons for the termination of the Agreement existed, it informed the defendant by a letter of March 22, 2007 that it refuses the termination, secondly that it finds termination to be impermissible and that it considers that no termination was made, i.e., that it is not legally valid. Plaintiff claims that the first, direct and irreparable consequence of any collateral will be the bankruptcy of the plaintiff. Plaintiff therefore suggests that the court determine the termination of the loan by the defendant as of February 08, 2007 ineffective and order the defendant to pay to the plaintiff the HRK equivalent value of EUR 1,377,864.30 increased by applicable interests and to cover the plaintiff's litigation costs.

In addition to the lawsuit, the plaintiff filed a motion for temporary injunction wherein it states that the motion concerns the plaintiff's non-monetary claims. The plaintiff claims that the very circumstance of the plaintiff not stating the reasons for termination in the termination letter makes the lawsuit, and consequently the plaintiff's claims, probable. The plaintiff claims that the defendant would not suffer any damages from the proposed temporary injunction as the loan is not yet due for payment, but is only due on June 30, 2008, having thereby fulfilled the second prerequisite for the granting of a temporary injunction. The plaintiff

Docket no. X-P-406/2007-12

also claims that the only inevitable consequence of forcible collection due to termination of the loan would be the plaintiff's bankruptcy, which means its liquidation, the complete change of the current situation and the threat of irreparable damages. Plaintiff also claims that, having in mind the nature of the dispute between the parties, it feels that the temporary injunction would temporarily regulate the contentious relationship between the parties. Plaintiff therefore suggests that the court order a temporary injunction which would temporarily regulate the parties' contentious relationship by postponing the consequences of the loan termination, sent by the defendant to the plaintiff on March 08, 2007, and that the defendant is to refrain from undertaking enforcement actions arising from the termination of the loan.

In its response to the lawsuit, defendant stated the objection of lack of plaintiff's legal interest for filing a declaratory lawsuit. Defendant claimed that it had been misled by the plaintiff already at the time of processing the loan application, by Boris Mikšić, who was then a Member of the Management Board, signing a Statement from which it appeared that he was the only member-founder of the plaintiff and which Statement was one of the deciding facts for the approval of the loan. Defendant claimed to have later found out that besides Boris Mikšić there are other member-founders of plaintiff which was already sufficient to terminate the Agreement in accordance with the provision of Art. 12 par. 2 in relation to Art. 13 par. 1 point 7 of the Loan Agreement. Defendant claimed that subsequently other circumstances foreseen by the Art. 13 of the Loan Agreement occurred, i.e., freezing the borrower's giro account, changes in the business, that is, in liquidity or financial status of the borrower, which in the bank's opinion jeopardizes an orderly loan repayment, failing to fulfill obligations arising from the Agreement, that is, failing to submit financial statements, audit findings, information regarding status of the company, information on changes in the ownership structure and information regarding its position. Defendant claimed that the first loan amount was released on April 19, 2006 through a payment to the contractor Progress d.d. Beli Manastir and that further loan releases were continued until July 19, 2006. Defendant claimed that in August 2006 it received a request from Mr. Mikšić to cease further loan releases due to problems which arose between members-founders of the company. Defendant claimed that during the dispute between the owners, the main contractor Progres d.d. froze the plaintiff's account in November 2006 due to non-payment of the issued

3

Docket no. X-P-406/2007-12

invoices and that the co-owners subsequently froze the plaintiff's giro account, after which the defendant was forced to terminate the Loan Agreement. Defendant claimed that the plaintiff's giro account was blocked for 132 days until April 02, 2007 and that it still remains blocked.

In its memo of May 11, 2007 the plaintiff claimed that it has legal interest to seek court protection via a declaratory lawsuit since pursuant to the provision of Art. 187 of the Civil Procedure Act it can request from the court by lawsuit to determine existence of a legal relation, in this case based on the Loan Agreement concluded between the parties in dispute on April 06, 2006, because the defendant one-sidedly terminated the same on March 8, 2007 without stating concrete reasons for termination. Plaintiff claimed that it is not true that the Management Board Member Boris Mikšić signed a statement from which it appeared that he was the only member-founder of the plaintiff as such statement was signed by Stjepan Buljubašić what was unknown to Boris Mikšić. Plaintiff claimed that the question arose as to why did not the defendant, after allegedly having found out that there is another member of the company besides Boris Mikšić, terminate the Agreement at that time, but continued to fulfill its contractual obligations. Plaintiff claimed that it informed the defendant by the letter of February 02, 2007 that Boris Mikšić was its only founder, enclosing to the letter a resolution of the Commercial Court in Osijek dated January 31, 2007 and an excerpt from the court register of the same date. Plaintiff claimed that the reason for freezing its giro account was only defendant's non-fulfillment of contractual obligations as the defendant did not make payments of the performed construction works, despite plaintiff's frequent requests, for which the Loan Agreement was concluded in the first place. Plaintiff claimed that the plaintiff's giro account was blocked on the day of termination of the loan precisely because the defendant refused to fulfill its contractual obligations, so the defendant can not claim the freezing of the plaintiff's giro account to be a reason for termination. Plaintiff claimed that it is not disputable that during certain period in VII and VIII months of 2006 certain problems arose between plaintiff's founders at that time, but that the ownership structure was later on resolved. Plaintiff claimed that it is not true that the defendant was forced to terminate the loan agreement due to plaintiff's co-owners freezing plaintiff's giro account as the defendant terminated the agreement via a letter dated March 08, 2007 so the question arises how could it have known

4

Docket no. X-P-406/2007-12

of the co-owner's freeze which happened only on March 12, 2007 after the freeze of the company Progres d.d. was revoked. Plaintiff also claimed that the defendant froze plaintiff's account with the amount of HRK 12,173,632.30 on April 24, 2007. Plaintiff claimed that, considering the new circumstances, it proposes that the court rule that the Agreement on Long-term Loan of April 06, 2006 is in full effect and order the defendant to pay the amount of HRK 12,123,504.50 increased by applicable interests. Plaintiff also proposed that the court order temporary injunctions mentioned in the pronouncement of this resolution by referring to defendant's freezing the plaintiff's giro account on April 24, 2007 and thereby completely disabling the plaintiff in further implementing the project of production plant construction, thereby changing the current situation and threatening the plaintiff with irreparable damages.

In its memo dated May 22, 2007, the defendant claimed that the plaintiff via its memo dated May 11, 2007 changed the nature of its lawsuit as the new lawsuit differs from the initial one both with respect to its content and its basis. Defendant claimed that from the plaintiff's motion for temporary injunction it is not clear for which concrete non-monetary claim insurance is being requested and that the temporary injunctions can not be ordered based on a request that does not contain the claim of the insurance creditor. Defendant claimed that the plaintiff's giro account was blocked after terminating the Loan Agreement and when the total amount paid to the plaintiff became due for payment. Defendant claimed that it requested payment of all due claims based on the promissory note and that the promissory note, within the meaning of the Enforcement Act, has the power of a final resolution on enforcement, that is, of a deed of enforcement, and that a court decision cannot interdict either temporarily or permanently payment based on a deed of enforcement, or on a resolution on enforcement. Defendant also claimed that the plaintiff has no funds in its giro account so it is unclear what should be unblocked in this case.

In its memo dated May 31, 2007, the plaintiff claimed that the defendant's objections related to the lawsuit as formulated in the memo of May 11, 2007 are not founded. Plaintiff claimed that if the request for determining that the termination was not effective is accepted, the Loan Agreement would remain

Docket no. X-P-406/2007-12

in full force and effect which is exactly what the plaintiff wrote in its memo of May 11, 2007. Plaintiff also claimed that it amends point 2 of the lawsuit which refers to payment as there was a mistake in the writing of the memo of May 11, 2007 so that it requests the defendant to pay the amount of HRK 10,113,523.00 increased by applicable interests. Plaintiff claimed that the defendant abused its rights by terminating the Loan Agreement, even though the plaintiff did not cause any reason for termination [sic], in order to obtain the plaintiff's assets – a constructed building worth far more than the total released loan amount. Plaintiff claimed that it can request the proposed temporary injunction regardless of the fact that the defendant froze plaintiff's giro account via a promissory note, because the promissory note was executed through an abuse of rights. Plaintiff claimed that it did not request ban of the payment pursuant to the promissory note but protection from irreparable damage and violence caused by defendant's actions.

Plaintiff's motion for temporary injunction is not founded.

In the amended motion for temporary injunction filed on May 11, 2007 the plaintiff refers to the provision of Art. 298 of the Enforcement Act and states that the defendant "froze" its giro account for the amount of HRK 12,173,630.00 and in its memo dated May 31, 2007 finds it undisputable that the defendant undertook such actions pursuant to the promissory note given by the plaintiff to the defendant as collateral related to the Agreement dated April 06, 2004.

Art. 298 of the Enforcement Act prescribes that a temporary injunction can be ordered for the purpose of securing a non-monetary claim if the insurance creditor shows probable the existence of its claim and the danger that without such injunction the insurance debtor would prevent or significantly make the execution of the claim more difficult, especially by changing the existing situation or if it shows it probable that the injunction is necessary to prevent violence or occurrence of the threat of irreparable damage; the insurance creditor need not thereby prove the existence of danger if it shows it probable that the insurance debtor would suffer only insignificant damages from the proposed injunction.

Docket no. X-P-406/2007-12

It should primarily be noted that according to provision of Art. 183 par. 1 of the Enforcement Act an ordinary promissory note has the effect of a legally binding resolution on enforcement and that a blank promissory note has the same effect has (Art. 183a par. 2 of the Enforcement Act). According to the court practice (which can by analogy also be applied in this case given the cited provision of Art. 183 and 183a of the Enforcement Act) a temporary injunction whereby the court would ban execution of compulsory enforcement is not permitted (High Commercial Court of the Republic of Croatia, Pz-1888/95 June 06, 1995), that is, whereby the court would ban the execution of a legally binding resolution on enforcement (High Commercial Court of the Republic of Croatia, Pz-301/99 of February 09, 1999).

Plaintiff's motion for temporary injunction would already for this reason be unfounded.

However, there is a view in legal theory that it is possible to order temporary injunctions for the purpose of securing non-monetary claims for example by banning the creditor, acting as the insurance debtor, from collecting the claim from the promissory note, by banning the bank from making a payment pursuant to the promissory note, by banning the disposing and the encumbering of the promissory note and by seizing the promissory note and depositing it for safekeeping. According to the same view, temporary injunctions from Art. 297 of the Enforcement Act could be ordered for securing a monetary claim if the insurance creditor shows probable existence of circumstances necessary for the order (Art. 296 of the Enforcement Act).

In this particular case, the plaintiff did not state what type of non-monetary claim it has against the defendant, and the law suit shows that the plaintiff only put forward the claim for payment of HRK 10,113,523.50 increased by applicable interests, so one can only speak of the potential existence of a monetary claim of the defendant against the plaintiff. It should be however mentioned that the temporary injunctions proposed by the plaintiff can not achieve the purpose of securing such a (potential) claim of the plaintiff against the defendant.

Furthermore, the plaintiff refers to the provision of Art. 299 par. 2 of the Enforcement Act according to which the court can order an injunction by which it would regulate the contentious relationship between the parties on a temporary basis if that is necessary for preventing irreparable or hard-to-repair damage, violence or if it is necessary for other important reasons to ensure legal order.

7

Docket no. X-P-406/2007-12

In its amended proposal of May 11, 2007 the plaintiff however does not propose how to regulate the contentious relationship between the plaintiff and the defendant on a temporary basis. This is because the injunctions proposed by the plaintiff are not injunctions from Art. 299 par. 2 of the Enforcement Act but injunctions from Art. 299 par. 1 of the Enforcement Act for ordering of which (as earlier explained) no prerequisites from Art. 298 of the Enforcement Act have been met (there is no non-monetary claim of the plaintiff against the defendant) that is, the ordering of which is not permitted.

As the conditions for ordering a temporary injunction have not been met, the proposal of the plaintiff is rejected and the decision made as in the pronouncement.

Rijeka, June 27, 2007
[seal:]
REPUBLIC OF CROATIA
5
COMMERCIAL COURT IN RIJEKA

Judge
Nada Maraš
[signature]

[stamp:]
Nada Maraš
[illegible]

**INFORMATION ON LEGAL REMEDIES:**

The discontent party can file an appeal against this resolution within 8 days of receiving it. The appeal is being via this court in three identical copies, and the High Commercial Court of the Republic of Croatia in Zagreb will be the deciding court.