UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Cortec Corporation, a Minnesota
corporation,

Civil Action No. 07 Civ. 6094 (CM) (DFE)

              Plaintiff,

**Electronically Filed**

v.

Erste Bank der oesterreichischen Sparkassen
AG (Erste Bank), an Austrian corporation,

              Defendant.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Kirk W. Reilly
GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-632-3305
Facsimile: 612-632-4305
kirk.reilly@gpmlaw.com

AND

O'ROURKE & DEGEN, PLLC
Ronald D. Degen (RD 7808)
225 Broadway, Suite 715
New York, New York 10007
Telephone: (212) 227-4530
Facsimile: (212) 385-9813
rdegen@odlegal.com

*Attorneys for Plaintiff Cortec Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 1

III.    ARGUMENT .............................................................................................................. 3

        A.      Erste Bank AG has Impermissibly Converted a Rule 12(b)(6) Motion into
               a Motion for Summary Judgment ....................................................................... 3

        B.      Cortec's Complaint Raises Three Distinct Claims for Relief ............................ 7

               1.      Tortious Interference with Contract and Prospective Economic
                       Advantage ............................................................................................... 7

               2.      Breach of Contract ................................................................................ 15

               3.      Declaratory Judgment ........................................................................... 17

        C.      The Forum Selection Clauses do not Bar this Action ....................................... 18

        D.      The Doctrine of Forum Non Conveniens Does Not Require Dismissal ............. 21

        E.      Erste Bank Croatia and EcoCortec Need Not be Joined as Defendants ............. 23

IV.     CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*@Wireless Enterprises, Inc. v. AI Consulting, LLC*, 2006 WL 3370696 at *13 (W.D.N.Y. 2006)..................................................................................................................4

*Abdullah v. Pfizer, Inc.*, 77 Fed. Appx. 48 (2nd Cir. 2003).......................................24

*Adipar Limited v. PLD Int'l. Corp.*, 2002 WL 31740622 at *10 (S.D.N.Y. 2002).....................15

*Aerotel, Ltd. v. IDT Corp.*, 2007 WL 1334547 at *5 (S.D.N.Y. 2007).........................28

*Bank of America National Trust and Savings Assoc. v. Private Trust Corp. Ltd.*, 1998 U.S. Dist. LEXIS 6353 at *8 (S.D.N.Y. 1998) ..................................................20

*Bon Jour Group, Ltd. v. Elan-Polo, Inc.*, 1997 WL 401814 at *2 (S.D.N.Y. 1997).............23

*Boutari and Son v. Attiki Importers and Distributors Inc.*, 22 F.3d 51 (2nd Cir. 1994)..................................................................................................................21

*Catskill Dev., L.L.C. v. Park Place Entertainment Corp.*, 144 F. Supp. 2d 215 (S.D.N.Y. 2001) ...............................................................................................11

*CBS, Inc. v. Ahern*, 108 F.R.D. 14 (S.D.N.Y. 1985) ...............................................11

*City of New York v. Pullman, Inc.*, 477 F. Supp. 438 (S.D.N.Y. 1979)........................21

*Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006)...........................16

*Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F. Supp. 838 (S.D.N.Y. 1982)..................................................................................................................11

*D'Jamoos v. Griffith*, 2001 U.S. Dist. LEXIS 17595 (E.D.N.Y. 2001)..........................7

*Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250 (S.D.N.Y. 2006)..........................18

*Deep Blue Ventures, Inc. v. Manfra, Tordella & Brookes, Inc.*, 6 Misc.3d 727 N.Y.S. 2d 298 (N.Y. Sup. Ct. 2004) ...............................................................14

*Dragotta v. Southampton Hospital*, 39 A.D. 3d 697, 698, 833 N.Y.S.2d 638 (N.Y. App. Div. 2007) ...............................................................................................15

*Fils-Aime v. Ryder TRS, Inc.*, 40 A.D.3d 917, 837 N.Y.S. 2d 199 (N.Y. App. Div. 2007)..................................................................................................................16

*General Media, Inc. v. Penthouse Media Group, Inc.*, 368 B.R. 334 (Bankr. S.D.N.Y. 2007) ...............................................................................................18

*G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233 (S.D.N.Y. 2001) ...................9, 17

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2nd Cir. 2006)..................................................................................................................5, 6

*Hartford Fire Ins. Co. v. Novocargo USA Inc.*, 156 F. Supp. 2d 372 (S.D.N.Y. 2001)..................................................................................................................20, 22

*Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94 (2nd Cir. 2000)........................7

*Heredia v. United States*, 887 F. Supp. 77 (S.D.N.Y. 1985)..........................................11

*Howard v. Town of Bethel*, 481 F. Supp. 2d 295 (S.D.N.Y. 2007) ...............................27

*In re Parmalat Securities Litigation*, 474 F. Supp. 2d 547 (S.D.N.Y. 2007)...............16

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2nd Cir. 2001)............................24

*Jurgens v. Poling Transportation Corp.*, 113 F. Supp. 2d 388 (E.D.N.Y. 2000)..........13

*Kaufmann v. Americraft Fabrics, Inc.*, 198 F. Supp. 2d 466 (S.D.N.Y. 2002)................8

*McLaughlin v. Pezzolla*, 2007 WL 676674 at * 1 (N.D.N.Y. 2007) ..............................4

*Modern Computer Corp. v. Ma*, 862 F. Supp. 938 (E.D.N.Y. 1994) ............................28

*Momen v. United States*, 946 F. Supp. 196 (N.D.N.Y. 1996) ......................................15

*Morse v. Swank, Inc.*, 493 F. Supp. 110 (S.D.N.Y. 1982) ...........................................11

*Mouawad National Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414
(S.D.N.Y. 2007)...........................................................................................................13

*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 51 F. Supp. 2d 457
(S.D.N.Y. 1999) ............................................................................................... 11, 13, 15

*Oliver Schools, Inc. v. Foley*, 930 F.2d 248 (2nd Cir. 1991)........................................4

*ORIX Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 844 F. Supp. 1271
(N.D. Ill. 1994)............................................................................................................27

*Peck v. Baldwinsville School Board of Education*, 7 Fed. Appx. 74 (2nd Cir. 2001) ....................7

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252 (1981).............................23

*Pliva D.D. v. Baxter Int'l. Inc.*, 2004 WL 2011391 (N.D. Ill. 2004)...........................23

*Porat v. Lincoln Towers Community Association*, 464 F.3d 274 (2nd Cir. 2006)..........................4

*Resolution Trust Corp. v. Stone*, 998 F.2d 1534 (10th Cir. 1993)................................26

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986)........................................28

*Sablic v. Armada Shipping APS*, 973 F. Supp. 745 (S.D. Tex. 1997) ..........................22

*Scutti Enterprises, LLC v. Park Place Entertainment Corp.*, 322 F.3d 211 (2nd Cir.
2003).............................................................................................................................10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002)..............................4

*Synovus Bank of Tampa Bay v. Valley National Bank*, 487 F. Supp. 2d 360
(S.D.N.Y. 2007) ............................................................................................................18

*Telesca v. The Long Island Housing Partnership, Inc.*, 443 F. Supp. 2d 397
(E.D.N.Y. 2006)..........................................................................................................4, 6

*United States v. Tate & Lyle North American Sugars, Inc.*, 162 F. Supp. 2d 236
(S.D.N.Y. 2001)...........................................................................................................11

*Vidovic v. Losinjska Plovidba Oour Broadarstvo*, 1995 WL 224397 (E.D. Pa.
1995)..............................................................................................................................22

## FEDERAL STATUTES

Federal Rule of Civil Procedure 12(b) ...................................................................passim

Federal Rule of Civil Procedure 19...........................................................................23

Federal Rule of Civil Procedure 56.........................................................................5, 6

Federal Rule of Civil Procedure 56(f).........................................................................10

## I.    INTRODUCTION

Under the guise of a motion to dismiss, Defendant Erste Bank der oesterreichischen Sparkassen AG ("Erste Bank AG") actually asks this Court to grant summary judgment in its favor. While Erste Bank AG frames its arguments in terms of the standards of Federal Rule of Civil Procedure 12(b)(6), even a cursory review of its memorandum of law reveals that what Erste Bank AG actually argues is that it is entitled to summary judgment on Cortec's claims. Such an argument is premature. At Defendant's request, Plaintiff Cortec Corporation ("Cortec") agreed to refrain from conducting discovery until Defendant's motion to dismiss has been resolved. Defendant's motion, however, raises numerous fact questions that can only be resolved after discovery has been completed. Cortec has thus far been denied the opportunity to locate and review evidence in Defendant's possession to support its claims. At this early stage of the proceedings, Cortec has met its burden of presenting cognizable claims for relief within the meaning of Rule 12. Defendant's motion should therefore be denied.

## II.    FACTUAL BACKGROUND

In 2004, Cortec formed a subsidiary under the laws of Croatia named EcoCortec. (Declaration of Boris Miksic ("Miksic Decl."), ¶ 4). EcoCortec was formed to build a large extrusion facility in Beli Manastir, Croatia that would supply Cortec with the anti-corrosion films that Cortec would then sell to Cortec's customers and distributors. (*Id.*). To finance the construction of the Beli Manastir facility, EcoCortec entered into a loan agreement with Erste & Steiermarkische Bank ("Erste Bank Croatia"). (*Id.*, ¶¶ 5-7, 11). That loan was negotiated by Boris Miksic. (*Id.*). During the loan negotiation process, Miksic made clear to Erste Bank Croatia that he was an officer of both Cortec and EcoCortec. (*Id.*). In fact, the loan application submitted by EcoCortec informed Erste Bank Croatia that the borrowed funds would be used to construct and operate an anti-corrosion film extrusion plant whose primary customer would be

1

Cortec.  The application explained that EcoCortec would supply films to Cortec, which would then re-sell them to Cortec's own distributors and customers.  (*Id.*, ¶¶ 11-12).  From the beginning of the parties' relationship, then, Erste Bank Croatia and Erste Bank AG knew of the contracts between Cortec and EcoCortec, and between Cortec and its customers and distributors.

Because EcoCortec's plant would be located in a so-called Croatian Free Zone (for war devastated areas), Miksic was required to obtain financing through a Tier I bank.  (Miksic Decl., ¶ 5).  When Miksic first met with representatives of Erste Bank Croatia, he explained that requirement and asked whether Erste Bank Croatia qualified as a Tier I bank.  (*Id.*, ¶ 7).  Erste Bank Croatia assured Miksic that it was so qualified, relying on its affiliation with the much larger Erste Bank AG as evidence.  (*Id.*).  In fact, Erste Bank Croatia provided Miksic with a copy of Erste Bank AG's annual report as evidence that Erste Bank Croatia was sufficiently capitalized to satisfy the requirements of the Croatian government.  (*Id.*, ¶ 7).  Erste Bank Croatia represented to Miksic that Erste Bank AG's annual report was also its own annual report.  (*Id.*). The annual report holds out Erste Bank Croatia as Erste Bank AG's agent in Croatia, a representation consistent with the representations made by Erste Bank Croatia's employees. (Affidavit of Josip Cicek ("Cicek Aff."), Ex. K).

Erste Bank Croatia also informed Miksic directly that it did not have authority to approve EcoCortec's loan application, but had to request such authority from Erste Bank AG.  (Miksic Decl., ¶ 10).  Moreover, a member of Erste Bank AG's board of directors told Miksic that Erste Bank AG was aware of EcoCortec's loan application to Erste Bank Croatia and that Erste Bank AG looked forward to working with Miksic.  (*Id.*, ¶ 14).

At Erste Bank Croatia's request, EcoCortec also provided Erste Bank Croatia with copies of Cortec's contracts with distributors and customers, as well as detailed financial and strategic information about the Cortec and EcoCortec businesses.  (Miksic Decl., ¶¶ 11-12).  Cortec also

2

executed a corporate guaranty of the loan issued to EcoCortec, providing further evidence of the close working relationship between those companies. (*Id.*, ¶ 16). The parties ultimately entered into a loan agreement in April 2006. On March 8, 2007, Erste Bank Croatia, acting as the agent of Erste Bank AG, notified EcoCortec that it had decided to terminate prematurely the loan agreement and immediately require repayment of all amounts advanced to EcoCortec. (Miksic Decl., ¶ 17). Erste Bank Croatia has not responded to EcoCortec's repeated offers to cure whatever "default" Erste Bank Croatia believes occurred. (*Id.*). Erste Bank Croatia and its principal have thus caused serious damage to Cortec by forcing EcoCortec to violate its agreement with Cortec to supply anti-corrosion films. (*Id.*, ¶¶ 18-19). Those banks have also interfered with Cortec's contracts with its own distributors and customers, to whom it had agreed to re-sell those films. (*Id.*). Moreover, the banks' actions have placed Cortec's own assets in jeopardy due to the corporate guaranty Cortec executed as part of the loan agreement.

## III.    ARGUMENT

### A.    Erste Bank AG has Impermissibly Converted a Rule 12(b)(6) Motion into a Motion for Summary Judgment

While Erste Bank AG styles its motion as a motion to dismiss, what it really seeks is summary judgment on the limited factual record it presents. That tactic is not surprising, given that Cortec has easily satisfied the pleading requirements necessary to survive a traditional motion to dismiss. While a motion for summary judgment is directed to the merits of a litigant's case, a motion to dismiss under Rule 12 tests only whether the plaintiff has pled a claim for relief recognized by the law. The United States Supreme Court has made clear that, to satisfy its burden under the Federal Rules, a plaintiff's complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 997 (2002). "Such a statement must simply give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."
*McLaughlin v. Pezzolla*, 2007 WL 676674 at * 1 (N.D.N.Y. 2007). On the other hand,
"dismissal is appropriate only where it appears beyond doubt that the plaintiff can prove no set of
facts in support of her claim which would entitle her to relief." *Id.* "The issue is not whether a
plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support
the claims." *Telesca v. The Long Island Housing Partnership, Inc.*, 443 F. Supp. 2d 397, 401
(E.D.N.Y. 2006).

While Defendant pays lip service to the liberal pleading standards of the Federal Rules, it
ignores them while addressing the merits of Cortec's claims.[1] Instead, Defendant has purposely
converted its motion to dismiss into a full-blown motion for summary judgment. Cortec quoted
from a single document in its Complaint, Erste Bank AG's annual report. Nevertheless, in
support of its motion to dismiss, Defendant has submitted not only that report, but also seven
additional exhibits not referenced by Cortec. Defendant then relies on those documents to argue
that Cortec's claims fail not as a matter of law, but on the merits. Such argument has no place in
a motion to dismiss under Rule 12(b)(6).

Rule 12(b) itself provides that "if, on a motion asserting the defense numbered (6) to
dismiss for failure of the pleading to state a claim upon which relief can be granted, matters

---

[1] As required by Rule 12(b)(6), Defendant does make a cursory allegation that Cortec has failed
to properly plead its claims for relief. Cortec will demonstrate below the falsity of that
allegation, as Cortec's Complaint properly alleges each element of the claims it has brought.
Nevertheless, should this Court agree that Cortec's Complaint does not adequately set forth each
element of the claims it brings, Cortec respectfully requests leave to amend its Complaint to
address those perceived deficiencies. Leave to amend is routinely granted when a complaint is
dismissed for failure to state a claim upon which relief can be granted. *See Oliver Schools, Inc.
v. Foley*, 930 F.2d 248, 252 (2nd Cir. 1991); *Porat v. Lincoln Towers Community Association*,
464 F.3d 274, 276 (2nd Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an
opportunity to replead after dismissal of a complaint under Rule 12(b)(6)"). To receive leave to
amend, a party need not file a formal motion, but instead need only note in its opposition brief its
request for leave. *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, 2006 WL 3370696 at *13
(W.D.N.Y. 2006).

outside the pleading are presented to and not excluded by the court, the motion shall be treated as

one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  The

reason for that distinction is not purely academic.  Rule 12 and Rule 56 are designed to address

pretrial motions at very different stages of the proceedings.  As the Second Circuit Court of

Appeals has explained:

> The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal
> sufficiency of the plaintiff's statement of a claim for relief *without* resolving a
> contest regarding its substantive merits.  The Rule thus assesses the legal
> feasibility of the complaint, but does not weigh the evidence that might be offered
> to support it.  The streamlined testing of the substantive merits, on the other hand,
> is more appropriately reserved for the summary judgment procedure, governed by
> Rule 56, where both parties may conduct appropriate discovery and submit the
> additional supporting material contemplated by that rule.  Determining the
> summary judgment motion is fact-intensive.  It is the proper procedural device to
> consider matters outside the pleadings, such as facts unearthed in discovery,
> depositions, affidavits, statements, and any other relevant form of evidence.

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2nd Cir. 2006).

To preserve the distinction between motions under Rule 12 and Rule 56, the conversion of a

motion to dismiss into a motion for summary judgment is mandatory if any matters outside the

pleadings are considered.  *Telesca*, 443 F. Supp. 2d at 402.

Erste Bank AG attempts to circumvent that requirement by arguing that the eight exhibits

it attaches to its brief are "integral to Plaintiff's claims."  (Defendant's Brief, p. 2).  That

argument is misguided.  With the exception of Erste Bank AG's annual report, Cortec's

allegations do not rely on any of the exhibits offered by Defendant.  While those exhibits might

generally relate to the issues raised in Cortec's Complaint, they cannot reasonably be described

as "integral" to Cortec's allegations.  To be "integral," the documents in question must be relied

on by the plaintiff in drafting its complaint.  *See Global Network Communications*, 458 F.3d at

156-57.  Even explicit reference to a document in a pleading is not alone sufficient to permit that

document to be considered on a motion to dismiss. *See Telesca*, 443 F. Supp.2d at 403 ("Clearly, not every document referred to in a complaint may be considered incorporated by reference and thus submitted by the moving party in support of a motion to dismiss").

While the use of documentary evidence to refute a plaintiff's allegations is certainly appropriate on a motion for summary judgment, it has no place in considering a motion to dismiss under Rule 12. *See id.* at 402 ("The Second Circuit has never condoned considering material outside the pleadings on a motion to dismiss if such material amplifies or refutes allegations in the complaint. Instead, it is well-established that the court may only consider materials outside the pleadings that are either an appropriate subject for judicial notice, or were integral to the complaint or incorporated in it by reference"). What Defendant asks this Court to do is reach the merits of Cortec's claims before Cortec has been given any opportunity for discovery. As shown by Boris Miksic's Declaration, Cortec currently possesses some evidence to support its claims. The purpose of Rules 12 and 56 is not, however, to require a plaintiff to possess all evidence it might need to prove its claims at the time it commences litigation.

For that reason, "only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2nd Cir. 2000). Before summary judgment may be granted, the plaintiff must be given the opportunity to "discover information that is essential to his opposition to the motion for summary judgment." *Id.*; *see also Peck v. Baldwinsville School Board of Education*, 7 Fed. Appx. 74, 75 (2nd Cir. 2001); *D'Jamoos v. Griffith*, 2001 U.S. Dist. LEXIS 17595 (E.D.N.Y. 2001). Erste Bank AG has asked this Court to rule against Cortec on the merits of Cortec's claims before Cortec has had the opportunity to propound a single interrogatory or document request, or depose any of the individuals involved in this transaction. Without that necessary discovery, Cortec is severely limited in its ability to respond to

Defendant's premature argument on the merits of its claims. At the very least, Miksic's declaration and the exhibits attached thereto provide a sufficient basis to permit Cortec to conduct discovery.

**B.      Cortec's Complaint Raises Three Distinct Claims for Relief**

In its Complaint, Cortec alleges three distinct theories of relief—tortious interference, breach of contract, and declaratory judgment. Each of those allegations states a claim upon which relief may be granted, and thus satisfies the liberal pleading requirements of this early stage of litigation.

**1.      Tortious Interference with Contract and Prospective Economic Advantage**

Defendant argues that Cortec's tortious interference with contract and tortious interference with prospective economic advantage claims fail because Cortec "does not sufficiently allege the required elements" of the claims and also because those claims are "based on conclusory allegations that are not supported by the documentary evidence." (Defendant's Brief, p. 7). Neither of those arguments has any merit. As an initial matter, there can be no real dispute that Cortec has properly alleged each element of its tortious interference claims. Under New York law, "a claim for tortious interference with contract requires (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance without justification; and (4) damages." *Kaufmann v. Americraft Fabrics, Inc.*, 198 F. Supp. 2d 466, 472 (S.D.N.Y. 2002). Cortec's Complaint unambiguously alleges each of those required four elements. (Complaint, ¶¶ 3-6, 8, 18-20, 50, 51, 56-58, 63-69).

Defendant appears to argue, however, that Cortec does not properly allege that Erste Bank AG had knowledge of Cortec's contract with EcoCortec and its contracts with its distributors and customers. That argument is flatly contradicted by Cortec's Complaint. In

paragraph 50, Cortec alleges that "Erste Bank AG and Erste Bank Croatia requested and obtained from Cortec copies of all of Cortec's distributor agreements, its business plan for the EcoCortec Facility, and much more detailed financial and strategic information including information related to EcoCortec's agreement to supply Cortec with the film products that Cortec would then sell to distributors and consumers."  Again in paragraph 66, Cortec alleges that "Defendant Erste Bank AG knew of the contract between EcoCortec and Cortec, the contracts between Cortec and its customers, and the contracts between Cortec and its distributors."

Defendant also claims that Cortec failed to allege that Erste Bank AG procured a breach of those contracts, or that those contracts were actually breached.  (Defendants' Brief, p. 9). Again, Defendant's argument misconstrues the Complaint.  Paragraph 56 of the Complaint directly alleges that Erste Bank AG's actions "prevented EcoCortec from complying with its agreement with Cortec to supply the necessary biodegradable anti-corrosion film products required by Cortec."  That paragraph further alleges that Erste Bank AG's actions "interfered with Cortec's ability to satisfy its obligation under its distribution agreements, and in some cases, its contracts with specific customers."  Those allegations are repeated in paragraphs 67-68. There can be no reasonable dispute that Cortec has properly alleged tortious interference.

Nor can there be any dispute that Cortec has properly alleged the elements of a tortious interference with prospective economic advantage claim.  To plead such a claim, a plaintiff must allege "(1) the existence of a profitable business relationship; (2) the torfeasor's interference with that relationship; (3) the torfeasor's use of dishonest, unfair, improper, or wrongful means; and (4) damage to the business relationship."  *Id.* at 473.  The use of improper or wrongful means may include the use of economic pressure.  *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 254 (S.D.N.Y. 2001).  Again, Cortec has alleged each of those four required elements.  In addition to those portions of the Complaint discussed above, Cortec makes further allegations

specific to this claim in paragraphs 71-77. As further explained in the remainder of the Complaint, Erste Bank AG's wrongful conduct consists of its unjustified decision to prematurely call due the entire amount lent to EcoCortec. That decision wrongfully exerted economic pressure on EcoCortec that interfered with Cortec's business relationship with EcoCortec and Cortec's business relationships with its distributors and customers.

By alleging each required element of these two causes of action, Cortec has satisfied its burden at this early stage of the proceedings. What Erste Bank AG actually argues is not so much that Cortec's allegations fail to state a claim upon which relief can be granted, the standard to be applied to a motion to dismiss, but rather that the evidence presented by Erste Bank AG refutes Cortec's allegations. That type of argument has no place on a motion to dismiss, but instead constitutes a *de facto* motion for summary judgment. The gravamen of Defendant's argument is that each of Cortec's allegations supposedly depends on an agency relationship between Erste Bank AG and Erste Bank Croatia. As Defendant's argument goes, the evidence Erste Bank AG has presented shows that it did not take any action with respect to the loan agreement at issue. Instead, the loan agreement was entered by Erste Bank Croatia and only that entity can be held responsible for Cortec's claims. That argument is not only seriously premature, it is also contradicted by the limited facts known by Cortec prior to discovery.

### a.    Tortious Interference and Agency Cannot be Decided Yet

Whether an agency relationship exists between Erste Bank AG and Erste Bank Croatia, and whether Erste Bank AG tortiously interfered with Cortec's contracts, both present issues of fact that cannot be resolved on a motion to dismiss. It is well-settled that claims for tortious interference with contract and tortious interference with prospective economic advantage do not lend themselves to resolution on a motion for summary judgment, much less a motion to dismiss. *See Scutti Enterprises, LLC v. Park Place Entertainment Corp.*, 322 F.3d 211, 217 (2nd Cir.

2003) (Reversing the district court's decision to grant motion to dismiss tortious interference claim) (citing *Catskill Dev., L.L.C. v. Park Place Entertainment Corp.*, 144 F. Supp. 2d 215, 236 (S.D.N.Y. 2001)); *Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F. Supp. 838, 850 (S.D.N.Y. 1982). As this Court has previously recognized:

> Whether defendants maliciously interfered with the negotiations or contract is a factual question. The answer rests in the hands of the defendants; plaintiff should have the opportunity through discovery to establish if defendants did interfere, whether they did so maliciously and by what means and whether they had justification.

*CBS, Inc. v. Ahern*, 108 F.R.D. 14, 27 (S.D.N.Y. 1985) (quoting *Morse v. Swank, Inc.*, 493 F. Supp. 110, 116 (S.D.N.Y. 1982)).

Similarly, whether an agency relationship exists between two entities is not a question that can be resolved at this early stage of the proceedings. "New York courts have recognized that the question of the existence and scope of an agency relationship is a factual issue that a court cannot properly adjudicate on a motion to dismiss." *Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999); *accord Heredia v. United States*, 887 F. Supp. 77, 80 (S.D.N.Y. 1985). In fact, the agency relationship depends so heavily on the facts of a given case that resolution of that issue even on summary judgment may not be possible. *See United States v. Tate & Lyle North American Sugars, Inc.*, 162 F. Supp. 2d 236, 243 (S.D.N.Y. 2001) ("[T]he existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment").

It would be inappropriate to dismiss Cortec's tortious interference claims, which depend in part on the existence of an agency relationship between Erste Bank AG and Erste Bank Croatia, before Cortec has even had an opportunity to conduct discovery on those issues. At this early stage of the proceedings, Cortec does not have access to any of the internal communications between the two banks about the subject loan. Nor does Cortec have access to

the banks' internal documents that show the relationship between those two entities. Rule 56(f) plainly provides that summary judgment is inappropriate where further discovery is required to respond to a motion. Such is the case here. If Defendant wishes to bring a motion for summary judgment, it should be required to wait until Cortec has had an opportunity to conduct discovery.

**b.    Cortec has Presented Evidence to Support its Claims**

Leaving that issue aside, Cortec has already presented evidence to support its tortious interference claims and to show that an agency relationship does exist between Erste Bank AG and Erste Bank Croatia. Defendant argues that Cortec's tortious interference claims fail because Cortec has not shown that Erste Bank AG knew of the contract between Cortec and EcoCortec and the contracts between Cortec and its distributors and customers. That argument is belied by the declaration of Boris Miksic, Cortec's President and an officer of EcoCortec. Mr. Miksic has testified that a member of Erste Bank AG's board of directors had personal knowledge of the loan application submitted by EcoCortec. (Miksic Decl., ¶ 14). That application described in detail the relationship between Cortec and EcoCortec and included copies of Cortec's own contracts with distributors and customers, whose requirements were to be supplied by EcoCortec. Moreover, Lydia Balog, the branch manager of Erste Bank Croatia in Osijck, informed Cortec that EcoCortec's loan application would have to be approved by Erste Bank AG at its Austrian headquarters, and that Erste Bank Croatia could not issue the loan without Erste Bank AG's approval. (*Id.*, ¶ 10). At the very least, those facts raise a question as to whether Erste Bank AG had knowledge of the contracts inextricably intertwined with the loan agreement.

Aside from its own actual knowledge of those contracts, Erste Bank AG also had knowledge of them through its agent, Erste Bank Croatia. New York law recognizes three distinct types of agency—actual, implied, and apparent. Actual agency "is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is

11

interpreted in light of all circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." *Old Republic Ins. Co.*, 51 F. Supp. 2d at 472. Implied agency arises when a principal gives implicit actual authority to an agent. *Id.* at 474. "Reliance on implied authority is acceptable so long as it is reasonable from the circumstances surrounding the transaction." *Id.* An actual or implied agency relationship may be inferred from the nature of the relationship between a corporate parent and subsidiary, like the relationship here. *See Mouawad National Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007). An agency relationship may exist in cases where the subsidiary corporation requires the consent of its parent before taking action. *Id.; see also Jurgens v. Poling Transportation Corp.*, 113 F. Supp. 2d 388, 399 (E.D.N.Y. 2000) ("The most critical element is that the agent acts subject to the principal's direction and control").

Defendant contends that no agency relationship was created between itself and Erste Bank Croatia because the loan agreement itself does not refer to Erste Bank AG. (Defendants' Brief, pp. 12-13). That is simply not the standard to be applied. An agency relationship may arise even if the parties to that relationship do not call it an agency relationship, and purposely do not intend to create such a relationship. *See Deep Blue Ventures, Inc. v. Manfra, Tordella & Brookes, Inc.*, 6 Misc.3d 727, 732, 791 N.Y.S. 2d 298 (N.Y. Sup. Ct. 2004). Here, Defendant's own brief suggests that an agency relationship, either actual or implied, exists between itself and Erste Bank Croatia. Despite being a non-party to the loan agreement, Erste Bank AG nevertheless argues that it is so closely related to Erste Bank Croatia that it should be entitled to enforce the loan agreement's forum selection clause. (Defendants' Brief, p. 17). In fact, Erste Bank AG argues that its relationship with Erste Bank Croatia is so close that Erste Bank AG's enforcement of the forum selection clause was "foreseeable" to Cortec. (*Id.*). What Defendant

12

argues, then, is that for purposes of an agency analysis, Erste Bank Croatia is an entirely distinct entity that acts without Erste Bank AG's input or control. When it comes time to consider a contractual forum selection clause, however, Erste Bank AG is suddenly so closely affiliated with Erste Bank Croatia that Erste Bank AG is entitled to enforce the terms of a contract to which it is not a party.[2]  Erste Bank AG cannot have it both ways on this issue by picking and choosing the instances in which it will consider itself to be closely aligned with Erste Bank Croatia. By its own admission, Erste Bank AG properly considers itself to be a party to the loan agreement at issue in this case. That admission, and the circumstances surrounding execution of the loan agreement, at the very least create an issue of fact on which Cortec is entitled to conduct discovery.

Cortec is also entitled to explore its apparent agency theory. An apparent agency relationship arises where the principal causes a third party to believe that an entity acts as the principal's agent. *Old Republic Ins. Co.*, 51 F. Supp. 2d at 474-75. Apparent agency may be created through words or conduct of the principal communicated to the third party. *Id.*; *see also Dragotta v. Southampton Hospital*, 39 A.D. 3d 697, 698, 833 N.Y.S.2d 638, 640 (N.Y. App. Div. 2007). "A principal causes his agent to have apparent authority by conduct which, reasonably interpreted, causes third persons to believe that the principal consents to have an act done on his behalf." *Momen v. United States*, 946 F. Supp. 196, 203 (N.D.N.Y. 1996). Apparent agency may also arise from the nature of a business relationship between two parties. *See Adipar Limited v. PLD Int'l. Corp.*, 2002 WL 31740622 at *10 (S.D.N.Y. 2002).

Here, Cortec has presented evidence that it received representations from Erste Bank AG about that entity's relationship with Erste Bank Croatia. Boris Miksic has testified that a member of Erste Bank AG's board of directors advised Miksic that Erste Bank AG was aware of

---

[2] As discussed at pages 19-22 below, the purported forum selection clause does not bind Cortec.

EcoCortec's loan application and that Erste Bank AG looked forward to working with Cortec and EcoCortec. (Miksic Decl., ¶ 14). Erste Bank AG's annual report, provided to Cortec by Erste Bank Croatia, also contains representations made by Defendant about its relationship with Erste Bank Croatia. (*Id.*, ¶¶ 8-9). Miksic has testified that he understood that Erste Bank Croatia acted as Erste Bank AG's agent. (*Id.*, ¶ 9). The representations made by Erste Bank AG, combined with the nature of its relationship with Erste Bank Croatia, suggest that an agency relationship exists between those parties. Cortec is entitled to further explore that relationship through discovery.

Defendant objects that Cortec has not proven that Erste Bank AG had knowledge of Cortec's contracts with EcoCortec and Cortec's customers. (Defendants' Brief, p. 8). There is no dispute, however, that Erste Bank Croatia had knowledge of those contracts, as EcoCortec provided them as part of its loan application. (Miksic Decl., ¶ 11-12). That knowledge is imputed to Erste Bank AG as a matter of law. *See Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807, 824 (S.D.N.Y. 2006) ("Under agency principles, the general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it").

Erste Bank AG also argues that if any party breached the loan agreement, it was Erste Bank Croatia, not Erste Bank AG. (Defendants' Brief, p. 9). But that is no defense at all. It is beyond cavil that "principals typically are liable for torts and crimes committed by their agents acting within the scope of their authority." *In re Parmalat Securities Litigation*, 474 F. Supp. 2d 547, 550 (S.D.N.Y. 2007); *see also Fils-Aime v. Ryder TRS, Inc.*, 40 A.D.3d 917, 837 N.Y.S. 2d 199 (N.Y. App. Div. 2007). If Erste Bank Croatia tortiously interfered with Cortec's contracts, then Erste Bank AG is equally liable as the principal in that relationship.

Next, Defendant quibbles with Cortec's pleading by complaining that Cortec did not attach to its Complaint a copy of the actual contracts that were breached through Defendant's tortious conduct. Nothing in the Federal Rules requires a plaintiff to attach such contracts to its initial Complaint. Cortec did, of course, allege in its Complaint that these contracts were breached, an allegation that is alone sufficient to survive a motion to dismiss. In any event, examples of those contracts have now been submitted. (Miksic Decl., Exs. B and D).

With respect to Cortec's tortious interference with prospective economic advantage claim, Defendant suggests that Cortec must allege that Erste Bank AG acted solely with the malicious intent to inflict economic harm on Cortec. That suggestion is incorrect. "To state a claim for tortious interference with economic advantage, a plaintiff must plead facts that demonstrate that the defendant acted with the sole purpose of harming the plaintiff *or* that the defendant used dishonest, unfair or improper or wrongful means." *G-I Holdings*, 179 F. Supp. 2d at 254. Independently wrongful means may include fraud, misrepresentation, and economic pressure. *G-I Holdings*, 179 F. Supp. 2d at 254. Here, Cortec did, of course, allege in its Complaint that Erste Bank AG used dishonest, unfair, improper, or wrongful means in calling due the loan. (Complaint, ¶ 76). At this stage of the proceedings, that allegation is alone sufficient to withstand Defendant's motion to dismiss. Moreover, Cortec has presented evidence that Erste Bank AG not only employed wrongful economic pressure on EcoCortec by calling due its sole source of financing, it acted dishonestly in doing so and was motivated by political considerations. (Miksic Decl., ¶¶ 18-27). Cortec is entitled to discovery on this claim as well.

### 2.     Breach of Contract

Counts III, IV, and V of Cortec's Complaint seek to hold Erste Bank AG responsible for Erste Bank Croatia's breach of the loan agreement, under various agency theories. Defendant responds to those breach of contract counts by arguing that Cortec lacks standing to raise such a

claim, as Cortec is not a party to the loan agreement. (Defendants' Brief, p. 12). That argument ignores, however, Cortec's undeniable interest in the loan agreement as an intended beneficiary of the loan proceeds. An intended third-party beneficiary of a contract may bring a claim to enforce that contract. *General Media, Inc. v. Penthouse Media Group, Inc.*, 368 B.R. 334, 342 (Bankr. S.D.N.Y. 2007). A third party is an intended beneficiary when the contract suggests an intent to give the third party the right to enforce the contract. *Id.* The third party need not be explicitly mentioned in the contract, so long as the contract evinces an intent to benefit the third party. *Synovus Bank of Tampa Bay v. Valley National Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007). As this Court has recognized:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006).

While Cortec did not sign the loan agreement, it is clear that the parties who did sign the agreement intended Cortec to receive the benefit of it. In fact, when it approved the loan to EcoCortec, Erste Bank Croatia specifically noted that it had "taken into account [EcoCortec's] direct relationship with the foreign company Cortec Corporation, MN, USA." (Cicek Aff., Ex. B). Erste Bank Croatia further explained that "the business strategy of Cortec Corporation includes construction of a new plant in Croatia, in which the existing KNOW-HOW and an already established distribution network of Cortec & Co. will be used, through which the sale for the entire European market will be directed." (*Id.*). Erste Bank Croatia also requested and received EcoCortec's business plan, which explains in detail its business relationship with Cortec. Specifically, that business plan makes clear that the products to be manufactured at the Extrusion Facility would be devoted to supplying Cortec's needs. The business plan informed

Erste Bank Croatia that "the company Cortec Corporation from USA also represents a direct investor and warrant for obtaining part of funds needed for the execution of the investment." (Miksic Decl., Ex. B, p. 9). In fact, the plan explains that the Extrusion Facility to be operated by EcoCortec represents the "logical sequence" of Cortec's own business strategy. (*Id.*). The plan also explains that EcoCortec's role in that business strategy would be to satisfy Cortec's demand for products to sell to its existing distributors and customers. (*Id.*, p. 13). Taken together, those facts confirm that Erste Bank Croatia and EcoCortec intended Cortec to benefit from the loan agreement. By improperly calling due the loan, Erste Bank Croatia knowingly interfered with Cortec's business plan, entitling Cortec to pursue a breach of contract claim against Erste Bank Croatia. By extension, Cortec may pursue that claim against Defendant, as Erste Bank Croatia is Defendant's agent.

### 3.    Declaratory Judgment

Through Count VI of its Complaint, Cortec seeks a declaratory judgment that Erste Bank AG may not recover under the corporate guaranty agreement Cortec executed. In that Count, Cortec properly alleges that a justiciable controversy presently exists between the parties regarding Cortec's liability under that guaranty. That allegation is supported by the lawsuit pending between EcoCortec and Erste Bank Croatia, which challenges the decision to prematurely call due the entire loan amount. Because Erste Bank AG acts as Erste Bank Croatia's principal, a dispute exists between Cortec and Erste Bank AG as to Erste Bank AG's ability to collect on that corporate guaranty, either in its own name or through its Croatian agent. Because Erste Bank AG made the decision to call due the loan through its agent, it could also at any time seek to collect on Cortec's guaranty of that loan. Thus, Cortec's claim for declaratory relief is ripe and may be considered by this Court. *See Bank of America National Trust and Savings Assoc. v. Private Trust Corp. Ltd.*, 1998 U.S. Dist. LEXIS 6353 at *8 (S.D.N.Y. 1998).

**C.    The Forum Selection Clauses do not Bar this Action**

Erste Bank AG argues that Cortec's claims are barred by the forum selection clauses contained in the loan agreement and the guaranty Cortec executed.  Defendant makes that argument despite acknowledging that it is not a party to either of those agreements.  (Defendants' Brief, p. 17).  As a non-signatory, it is not at all apparent that Defendant can enforce the forum selection clauses at issue.  Cortec need not explore that issue further, however, because even a cursory review of those clauses shows that they are not enforceable under New York law.

A purported forum selection clause is not enforceable unless it makes the selected forum mandatory and exclusive.  "Second Circuit case law holds that when a forum selection clause specifies only the jurisdiction, the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Hartford Fire Ins. Co. v. Novocargo USA Inc.*, 156 F. Supp. 2d 372, 375 (S.D.N.Y. 2001).  As this Court has held:

> an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion or it leaves it in the control of one party with power to force on its own terms the appropriate forum.

*Id.* (quoting *City of New York v. Pullman, Inc.*, 477 F. Supp. 438, 442 (S.D.N.Y. 1979)).  To be enforceable, "the choice of forum must be mandatory rather than permissive." *Boutari and Son v. Attiki Importers and Distributors Inc.*, 22 F.3d 51, 53 (2nd Cir. 1994).

Applying that standard to the two clauses at issue here, it is apparent that neither can be read to oust this Court of jurisdiction, as neither clause contains any language suggesting an intent to make jurisdiction exclusive in a particular court.  The relevant clause in EcoCortec's loan agreement provides only that:

> In case of dispute, the court in the place of the Bank's headquarters will be the competent court.

(Cicek Aff., Ex. C).  Similarly, the clause in Cortec's guaranty agreement provides that:

> In case of dispute arising from the application of this Agreement, the actual
> competent court in Zagreb shall have the territorial jurisdiction. The contracting
> parties agree that Croatian law will be the governing law.

(*Id.*, Ex. F). Neither of those clauses contains anything resembling language rendering a

Croatian forum exclusive. In fact, neither clause contains any mandatory language at all.

Instead, each clause does no more than identify a particular Croatian court that has jurisdiction

over a dispute involving the contracts. As this Court has long recognized, however, merely

conferring jurisdiction on a particular court is not sufficient to oust this Court of jurisdiction.

Courts in this circuit have previously found much more extensive forum selection clauses

to be insufficient. In *Boutari and Sons*, 22 F.3d at 52, the clause at issue provided that "this

Agreement shall be governed and construed according to the Laws of Greece. Any dispute

arising between the parties hereunder shall come within the jurisdiction of the competent Greek

Courts, specifically of the Thasseloniki Courts." *Id.* Despite the use of the word "shall," the

Second Circuit Court of Appeals found that the clause was not mandatory. As the court

explained, "although the word 'shall' is a mandatory term, here it mandates nothing more than

that the Greek courts have jurisdiction." *Id.* at 53. Finding that the clause did not confer

exclusive jurisdiction on the Greek courts, the court refused to enforce it.

This Court considered a similar clause in *Hartford Fire Ins. Co.*, 156 F. Supp. 2d 372.

The clause at issue in that case provided that "any dispute arising under and in connection with

this Bill of Lading shall be governed by German Law and determined by the courts of Bremen."

*Id.* at 373-74. This Court interpreted that clause to be "permissive rather than mandatory"

because it did not contain language excluding all other forums. *Id.* at 375.

Even if the forum selection clauses were exclusive, they would still not be enforceable.

A forum selection clause will not be enforced under New York law where the clause is

unreasonable under the circumstances. *Id.* at 375. Among other things, a clause will be found

19

unreasonable where "enforcing the clause will for all practical purposes deprive the party of his day in court due to the grave inconvenience or unfairness of the selected forum" or where the "fundamental unfairness of the chosen forum may deprive the plaintiff of a remedy." *Id.* Cortec has presented extensive evidence showing that it cannot receive a fair trial in Croatia. (Miksic Decl., ¶¶ 20-32). Both the Commission of the European Communities and Transparency International have concluded that the Croatian legal system is beset by corruption. (*Id.*, Exs. G-K). American courts have recognized the difficulty in obtaining a fair trial in Croatia, and have consequently refused to force parties to litigate there. *See Vidovic v. Losinjska Plovidba Oour Broadarstvo*, 1995 WL 224397 (E.D. Pa. 1995); *Sablic v. Armada Shipping APS*, 973 F. Supp. 745, 748 (S.D. Tex. 1997); *Pliva D.D. v. Baxter Int'l. Inc.*, 2004 WL 2011391 (N.D. Ill. 2004).

As difficult as it is for an ordinary citizen to obtain justice in the Croatian legal system, it is even more difficult for a company such as Cortec. Cortec's president, Mr. Miksic, is well-known in Croatia, having finished third in the 2005 presidential election. (Miksic Decl., ¶ 20). Miksic is not, however, well-liked by the political establishment, as his campaigns for various offices have focused on the corruption present in all levels of Croatian government. (*Id.*, ¶¶ 20-32). Because of his political positions, Miksic has twice been targeted for assassination. (*Id.*). Of special relevance to this dispute, Miksic has in the past championed legislation that would curtail the ability of banks such as Erste Bank AG to acquire Croatian banks, as it did with Erste Bank Croatia. (*Id.*, ¶¶ 22-23). In such a charged political atmosphere, in a country widely acknowledged to suffer from a corrupt judicial system, it is manifestly unlikely that Cortec could obtain a fair trial against a bank favored by the Croatian government. Forcing Cortec to litigate its claims in Croatia would effectively deprive Cortec of a remedy.[3]

---

[3] Even if this Court were to enforce the forum selection clause, Cortec would still be able to maintain its tort claims against Erste Bank AG, as the clauses at issue do not extend to such

**D.    The Doctrine of *Forum Non Conveniens* Does Not Require Dismissal**

It is axiomatic that a plaintiff's choice of forum is entitled to deference. In fact, "a plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 258 (1981). Defendant incorrectly argues that Cortec's choice of forum is not entitled to deference, however, because Cortec is not a citizen of the state of New York. (Defendants' Brief, p. 20). That argument misunderstands the nature of the *forum non conveniens* inquiry. The Second Circuit Court of Appeals recently flatly rejected such a narrow interpretation of the doctrine. *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2nd Cir. 2001). Instead, that court recognized that a plaintiff's choice of forum is necessarily limited by the obligation to choose a forum in which the defendant is subject to jurisdiction. *Id.* As the court explained:

> One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit…It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district. Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant…In many circumstances, it will be far more convenient for a U.S. resident plaintiff to sue in a U.S. court than in a foreign country, even though it is not the district in which the plaintiff resides. It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district.

*Id.* at 72-73. Here, Cortec's choice of forum is entitled to substantial deference because it has sued Defendant in the only U.S. forum in which Defendant is amenable to suit.

Moreover, this forum represents the only forum in which Cortec can be assured of a fair trial. Defendant argues that Croatia represents an adequate alternative forum. (Defendants'

---

claims. The two clauses at issue do not purport to extend to anything other than claims brought under the respective contracts. Such narrow clauses cannot be read to extend to Cortec's tort claims, which are independent of the two contracts. *See e.g. Bon Jour Group, Ltd. v. Elan-Polo, Inc.*, 1997 WL 401814 at *2 (S.D.N.Y. 1997).

Brief, p. 20). As discussed above, however, Cortec cannot receive a fair trial in Croatia. If conditions in a foreign forum "plainly demonstrate" that the plaintiff is unlikely to obtain basic justice there, a *forum non conveniens* motion must be denied. *Abdullah v. Pfizer, Inc.*, 77 Fed. Appx. 48, 52 (2nd Cir. 2003).

Nor do the relevant private and public interest factors favor a Croatian forum. As with most cases involving a foreign party, litigation in the U.S. will be more convenient for one party and less convenient for the other. From Cortec's perspective, the effects of Defendant's wrongful conduct were felt in the United States, where Cortec's headquarters (and many of its customers) are located. While some relevant witnesses are certainly located outside the United States, many others are located in this country, including Cortec's senior executives and many of the customers affected by Defendant's actions. Also, it bears noting that Defendant is an Austrian, not a Croatian, company. As such, many of the relevant witnesses and documents are located in Austria. Nevertheless, Defendant advocates that this case should be brought in Croatia, a forum in which the court would face the same difficulties in compelling the participation of Austrian witnesses as would this Court. Access to sources of proof will be as difficult in Croatia, or Austria for that matter, as it will be in the United States. Similarly, the cost of bringing witnesses to Croatia from Austria and the United States will not be substantially different than the cost of bringing witnesses to the United States from those countries.

Nor do the public interest factors mandate dismissal. Defendant's primary arguments on this score seem to be that it would be easier for a Croatian court to apply Croatian law and that this Court has a "full docket." (Defendant's Brief, pp. 22-23). Neither of those factors can be considered dispositive of this issue. This Court is certainly capable of applying foreign law if necessary. It is also unlikely that adding this single case to the Court's docket will prove overwhelming. In addition, Cortec is an American company which suffered damages in America

as a result of Defendant's conduct.  To the extent a particular community has an interest in this

case, it is an American community interested in protecting one of its citizens.  For that reason, it

would not be unreasonable for New York jurors to decide this case, as New York represents the

only American forum in which Cortec can obtain jurisdiction over Defendant.  Neither the

relevant private nor public interest factors strongly favor a Croatian forum.  Given that Cortec

has raised serious questions about the fairness of Croatia's courts, and giving Cortec's choice of

forum the deference to which it is due, this Court should retain jurisdiction.

**E.    Erste Bank Croatia and EcoCortec Need Not be Joined as Defendants**

Contrary to Defendant's argument, Erste Bank Croatia and EcoCortec are not necessary

parties to this action under Rule 19.  Complete relief may be awarded to Cortec on its claims

independently of whether EcoCortec or Erste Bank Croatia is joined.  Cortec has alleged that

Erste Bank Croatia serves as the agent of Erste Bank AG.  From Cortec's perspective, Erste

Bank AG is thus fully liable for the actions of Erste Bank Croatia and can be held solely

responsible for those actions.  *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1549 (10th

Cir. 1993) (citing the Advisory Committee Note to Rule 19 and finding that "Rule 19 does not

vary the settled authorities holding a joint tortfeasor is merely a permissive party…").  Nor is

EcoCortec a necessary party to this action.  Cortec's claim for tortious interference with contract

involves EcoCortec only because EcoCortec entered into one of the contracts that was breached

through Defendant's tortious interference.  Similarly, EcoCortec has no involvement whatsoever

with the corporate guaranty Cortec executed.  EcoCortec need not be a party to this case to

determine whether Defendant or its agent can enforce that guaranty at the present time.  Finally,

while Cortec's breach of contract claim does more closely implicate EcoCortec, the relief that

Cortec seeks is entirely distinct from the relief sought by EcoCortec in Croatia.  The damages

suffered by Cortec from Erste Bank AG's breach of contract are entirely distinct from the

damages suffered by EcoCortec.  Cortec can receive complete relief on this claim even in EcoCortec's absence.

Nor will the present suit have any preclusive effect on EcoCortec or Erste Bank Croatia. Those entities cannot be precluded by litigation conducted in the United States in their absence. *See Howard v. Town of Bethel*, 481 F. Supp. 2d 295, 301 (S.D.N.Y. 2007) ("As a preliminary mater, we note that collateral estoppel can be invoked only against a party to the prior action or one in privity with such a party").  Whatever ruling this Court ultimately makes on Cortec's claims will not affect the outcome of an independent dispute in Croatia between two parties not named here, especially given that the claims brought here are distinct from any claims involved in that case.  To the extent any issues do overlap between the two cases, those issues can be decided even in those parties' absence.  *See ORIX Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 844 F. Supp. 1271, 1275 (N.D. Ill. 1994) ("[W]hether Gallo defaulted and whether ORIX needed to foreclose the security interest and seek enforcement of the principals' personal guarantees before bringing an action against Taylor are questions which can be decided without Gallo being joined as a party").

In any event, if this Court deems EcoCortec to be a necessary party to this case, EcoCortec is willing to consent to jurisdiction before this Court for purposes of resolving Cortec's claims.  (Miksic Decl., ¶ 33).  This Court will thus have before it Cortec, EcoCortec, and Erste Bank AG.  Because each of Cortec's claims depends on the agency relationship between Erste Bank AG and Erste Bank Croatia, Erste Bank Croatia need not be made a party to this case.  Cortec is perfectly free to elect to pursue its remedy solely against the principal in that relationship, rather than against both the principal and the agent.

Finally, Defendant argues that this Court should stay this action pending resolution of EcoCortec's claims against Erste Bank Croatia.  (Defendants' Brief, pp. 24-25).  It is well-

settled, however, that "the general rule of comity is that the domestic court should exercise jurisdiction concurrently with the foreign court.  Without a final judgment from another court, surrender of jurisdiction is justified only under exceptional circumstances."  *Aerotel, Ltd. v. IDT Corp.*, 2007 WL 1334547 at *5 (S.D.N.Y. 2007).  A stay is especially inappropriate in a case such as this, where Cortec is not a party to the pending Croatian action and raises claims not at issue in that case.  *See Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318-19 (S.D.N.Y. 1986); *Modern Computer Corp. v. Ma*, 862 F. Supp. 938 (E.D.N.Y. 1994).

## IV.    CONCLUSION

For the foregoing reasons, Cortec respectfully requests that this Court deny Defendant's motion to dismiss.

GRAY, PLANT, MOOTY, MOOTY
    & BENNETT, P.A.

By   s/Kirk W. Reilly
    Kirk W. Reilly (#153370)
    500 IDS Center
    80 South Eighth Street
    Minneapolis, MN  55402
    Telephone:  612-632-3305
    Facsimile:  612-632-4305
    kirk.reilly@gpmlaw.com

    AND

O'ROURKE & DEGEN, PLLC
    Ronald D. Degen (RD 7808)
    225 Broadway, Suite 715
    New York, New York 10007
    Telephone: (212) 227-4530
    Facsimile: (212) 385-9813
    rdegen@odlegal.com

GP:2278012 v4