# EXHIBIT B

## CONTRACT

### of Business and Technical Cooperation

Entered into this December 5, 2005 between:

CORTEC Corporation, 4119 White Bear Parkway, St. Paul, Minnesota 55110 and incorporated under the laws of Minnesota as the Licensor;

and

ECOCORTEC organized and existing pursuant to the laws of Croatia, with the business located at Slavonska 1, 31000 Osijek, Croatia as the Licensee.

**PURPOSE OF THE CONTRACT:**

The Parties to this Contract wish to reach a business and technical cooperation in the area of production and sale of products based on Licensor's proprietary VCI technology.

**ARTICLE I. DEFINITIONS:**

The terms used in this Contract will have the following meaning, except when a different meaning is clear from the context:

1. The term "PRODUCT" or "PRODUCTS" will mean the finished products specified in the paragraph where the subject is mentioned in the contract, as well as all other products about which the Parties come to written agreement from time to time.

2. The term "KNOW-HOW" will mean all scientific, technical, and technological knowledge, experiences, facts and information that the Licensor possesses and applies with reference to Products as they exist at the time of the making of the Contract.

3. The term "PRODUCTION" will mean the procedure used in the manufacture of Products which includes applicable production methods.

4. The term "THIRD PARTY" will mean any entity or person which has not signed this Contract.

5. The term "TERRITORY" will mean the entire territory of Italy, Hungary, Slovenia, Croatia, Serbia and Montenegro, Bosnia and Herzegovina, Macedonia, Bulgaria, Romania, Ukraine, Greece and Albania including the duty-free areas.

## ARTICLE II: TECHNOLOGY AND PRODUCTION

1. The Products covered by this Contract shall be limited to the following:

   VpCI-125
   VpCI-126
   Eco-Film
   Eco-Corr
   Eco-Works
   Cor-Pak VpCI Stretch Film

2. Licensor grants to Licensee the exclusive right to produce and sell Products within the Territory. Licensor is obligated to grant Licensee the entire know-how necessary for Licensee to manufacture Products and Licensor will deliver the full extent of its knowledge upon execution of this Contract.

3. Upon Licensee's request, an expert technician will be sent from Licensor and will be available in Licensee's plant during the introduction of the manufacturing of Product for a period of time (no greater than/minimum of) five (5) working days, and all expenses related to the per diem consultancy charges, travel, stay and health insurance or other necessities will be the responsibility of Licensee.

   Licensor will provide a minimum of five (5) working days of expert technician time for each year during the term of this Contract, and all expenses related to the per diem consultancy and other charges will be covered by Licensee.

4. After the beginning of regular production Licensor will assist Licensee in the manner necessary to solve technical problems with industrial applications of VCI containing materials.

5. Licensee will use the know-how granted by Licensor in this Contract exclusively for the purpose of manufacturing Products and for no other purpose and agrees to be bound by a separate non-disclosure agreement signed at the making of this Contract and incorporated by reference herein.

6. Except as authorized in this Contract, Licensee shall not grant any sublicenses or make any agreements with third parties for technical information, products or production methods and procedures for the duration of this Contract, without the prior written consent of Licensor.

### ARTICLE III: IMPROVEMENTS AND NEW KNOWLEDGE

Licensor will, for the duration of this Contract, inform Licensee of all improvements and new knowledge which relates to Products, production methods, or application of Products. Licensee will keep this information strictly confidential and shall be bound by a separate Secrecy Agreement signed at the making of this Contract and incorporated by reference herein, and marked Addendum "A."

### ARTICLE IV: CONFIDENTIAL INFORMATION

Licensee agrees and is obligated to take all reasonable precautions to secure confidentiality of all technical information which is received from Licensor according to this Contract and will not communicate technical information in any form or manner to third parties. Licensee has the right to deliver confidential information received from Licensor, with Licensor's prior written consent, to government authorities or institutions in the Territory if explicitly required by their laws or regulations, or required for the purpose of obtaining permits to begin production.

### ARTICLE V: TRADEMARKS

1. Licensor grants to Licensee for the duration of this Contract the exclusive right to use Licensor's trademarks to mark Products in the Territory. Licensee will mark Products with Licensor's trademarks pursuant to this Contract and appropriate laws and regulations.

2. Licensee agrees to mark with Licensor's trademarks only those Products which are produced strictly according to the quality standards established by Licensor and given to Licensee as part of the know-how.

3. All products, packing and printed materials relating to Products and their use will carry a sign as specified in Addendum "B."

### ARTICLE VI: WARRANTS AND RESPONSIBILITIES

1. The Parties to this Contract agree that Licensee is free to sell Products that are the subject of this Contract to its customer base in the Territory. Licensor retains the right to sell or distribute Products in all areas not specifically covered by this Contract, and, further, Licensee agrees to sell to Licensor, at a competitive market price, the Products covered in this Contract at the request of Licensor. Failure of Licensee to abide by this section will be deemed a breach by Licensee subject to termination pursuant to Article IX, Section 2.

2. Licensor is obligated for the duration of this Contract to deliver without delay to Licensee all orders relating to Products covered by this Contract and which are received from persons within the Territory.

3. Licensee warrants it will use its best efforts for the duration of this Contract to sell Products in the Territory, and will actively solicit business from users and potential users of Product. Upon failure of Licensee to actively solicit or advertise for sale of Product, Licensor may intervene and demand appropriate advertising and solicitation. Failure of Licensee to so supply in a timely manner will be deemed a breach of this Contract subject to termination pursuant to Article IX, Section 2.

### ARTICLE VII: COMPENSATION

Licensor will grant the license for Products covered in this Contract to the Licensee with no compensation.

### ARTICLE VIII: RELEASE FROM RESPONSIBILITY

The Parties are not responsible for the failure or delayed fulfillment of the obligations of this Contract in the event of Force Majeure, a decision of the federal or local government authorities or institutions with the power of public law, or any other cause outside the reasonable control of the Party in question, unless this Contract provides otherwise.

The Parties will use their best efforts to remove the causes listed above; or if not possible, to modify this Agreement as necessary for the continuation of cooperation among the Parties.

### ARTICLE IX: TERM AND TERMINATION

1. This Contract is effective on the date first above written (the "Effective Date"). The term of this Contract shall be for a period of two (2) years from the Effective Date. This Contract can be renewed or extended under the terms to be negotiated separately between Licensor and Licensee.

2. In the event one Party violates any essential provision of this Contract and does not correct that violation within thirty (30) days after having received notice in writing of the violation from the other party, the non-violating party will have the right to cancel this Contract with written notice to the violating party. At termination, Licensee will return any and all technical information to the Licensor, and will cease manufacture, sale or distribution of Product as of the date of termination; and failure to do so will be prima facie violation of trademark and patent rights of Licensor.

3. Licensee has the right at the expiration or termination of this Contract to complete orders accepted from its customers prior to the conclusion of the Contract and regardless of the time or cause of the Contract termination.

EcoCortec                                   4                                    12/5/2005 3:59:00 PM

### ARTICLE X: QUALITY AND PERFORMANCE TESTING STANDARDS

Upon request of Licensor, Licensee shall provide Licensor with Product samples for quality control testing purposes. Licensee shall be responsible for maintaining production records of various batches and performing regular quality control testing in accordance with TQM (Total Quality Management) System similar to ISO 9002. The Quality control system used by Licensee to check the quality of Products subject to this Contract shall be in accordance with Licensor's own ISO 9001 system or an approved equivalent. Licensee agrees to make records of production standards and quality tests available to Licensor on a regular basis.

### ARTICLE XI: ARBITRATION

Any dispute arising out of or in connection with this contract, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the London Court of International Arbitration Rules, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be one. The seat, or legal place of arbitration shall be Minneapolis, Minnesota, USA. The language to be used in the arbitral proceeding shall be English. The governing law of contract shall be the substantive law of the State of Minnesota, USA.

### ARTICLE XII: PURCHASE TARGETS

To make this Agreement commercially viable to Licensor, Licensee agrees to the Product purchase targets listed in Addendum C. Failure to meet the purchase targets in any calendar year during the term of this Contract will be deemed a breach by Licensee subject to termination pursuant to Article IX, Section 2. Licensee shall earn 3% rebate on total purchases of Products if purchases exceed the purchase target in the same calendar year. The rebate will be paid to Licensee in the form of an account credit to be issued not later than January 31 of the following year.

### ARTICLE XIII: NON-COMPETITION

Licensee agrees not to purchase similar products from any competitor of Licensor worldwide, during the term of this Contract and for five (5) years after the final termination date.

## ARTICLE XIV: CONTRACT MODIFICATIONS AND ADDITIONS

This Contract cannot be modified or added to without a specific writing, and then only in a written document signed by both parties and in which it is stated that it represents a modification or addition to this Contract.

Nullification of any portion of this Contract will have no force and effect on the validity of the remaining portions of the Contract. However, where the nullification of a specific portion has the effect of precluding one party from concluding this Contract, then that Party has the right to immediately terminate this Contract with written notice to the other party, provided that the terminating party was without knowledge of the nullification of that portion at the signing of the Contract.

## ARTICLE XV: NOTICE AND LANGUAGE OF CORRESPONDENCE

All notices to the Parties regarding this Contract will be considered valid if written in the English language and sent by registered mail. Notices shall be sent to the following addresses or to any other address of which the other party has been given notice:

Cortec Corporation
4119 White Bear Parkway
St. Paul, MN 55110 U.S.A.

EcoCortec
Slavonska 1
31 000 Osijek
Croatia

## ARTICLE XVI: GOVERNING LAW

This Contract is governed by the law of the state of Minnesota, U.S.A.

IN WITNESS WHEROF, the Parties have caused this Contract to be executed in their respective names by their respective officers thereunto duly authorized, all as of the date first above written.

CORTEC CORPORATION
LICENSOR
By: _____
Dated: 12/5/05

ECOCORTEC
LICENSEE
By: _____
Dated: 08.12.2005.
ECOCORTEC d.o.o.
Za proizvodnju i trgovinu
Slavonska 1, 31000 Osijek

EcoCortec                6                12/5/2005 3:59:00 PM

ADDENDUM "A"

THE CORTEC CORPORATION
SECRECY AGREEMENT

This Agreement is dated December 5, 2005 between EcoCortec (hereafter Company) and Cortec Corporation (hereafter Cortec) where Company is interested in reviewing certain technology of Cortec Corporation relating to corrosion inhibiting products and technology (the "Cortec Product").

Since Cortec considers such Product, its composition, samples and certain information about it, including any related patent application, to be of a secret and proprietary nature, Cortec is willing to supply such information under the terms specified below. Similarly, Company may disclose to Cortec certain proprietary information related to testing of Cortec Products, including samples, but only under the following terms:

1. "Cortec Confidential Information" or "Company Confidential Information" shall mean any written form of proprietary Information related to the matters described above that is marked "Confidential" and is given or delivered to the receiving party subsequent to the date of this Agreement. Cortec Confidential Information or Company Confidential Information shall also include any such information that is orally disclosed subsequent to the date of this Agreement if such verbally disclosed information is confirmed in a writing marked "Confidential" supplied to the receiving party within twenty (20) days after initial oral disclosure. Cortec Confidential Information or Company Confidential Information shall also include any samples owned by either party given or delivered to the receiving party subsequent to the date of this Agreement, provided such samples are labeled "Confidential."

2. The parties agree that the Company Confidential Information and Cortec Confidential Information shall be held strictly confidential by the receiving party and shall not be disclosed to third parties or used except for the purpose described above or as authorized in the foregoing Contract signed by the Parties. The receiving party will restrict disclosure of the disclosing party's Confidential Information within the receiving party's organization, including any divisions, subsidiaries, or affiliates, to those personnel having a need to know and shall inform all such personnel of the receiving party's obligations.

3. This Agreement and its obligations on both parties shall not apply to any information:

    a. that is or becomes public knowledge or is otherwise generally available to the public through no fault of the receiving party;

EcoCortec                                    7                              12/5/2005 3:59:00 PM

b. that is already in the receiving party's possession and was not received from the disclosing party or indirectly or is thereafter independently developed by Recipient;

c. that is hereafter rightfully received by the receiving party from a third party who did not receive the same, directly or indirectly, from the disclosing party.

4. Any violation of this Agreement will constitute irreparable injury for which damages are an inadequate remedy, and, in the event of any such violation, the party asserting the violation will be entitled to preliminary injunctive relief and to such other remedies as may be available at law or equity.

5. The receiving party agrees not to subject the disclosing party's product(s) to a component analysis, or otherwise attempt to determine its chemical composition. Product samples may be subjected to testing of physical properties to determine performance characteristics. The receiving party agrees to give the disclosing party reasonable notice of performance testing and to allow disclosing party's representative to be present at such testing. The receiving party will provide the disclosing party with a complete written report concerning all tests within three (3) months from the date of receipt of each sample.

6. Upon termination of this Agreement, either party may request the other to:

a. return any Confidential Information and all other tangible items either party may have received pursuant to this Agreement.

b. return any copies, summaries, records, descriptions, modifications or drawings and adaptations either party has made from the documents and items referred to in this section.

7. This Agreement shall terminate one (1) year from the date of the signing of this Agreement, or (2) upon expiration or termination of the foregoing Contract, whichever is later (the "Termination Date"), after which no additional disclosures will be made pursuant to this Agreement. The confidentiality and non-use provisions of this Agreement will terminate six (6) years from the Termination Date.

8. No license, express or implied, to use in any manner any Confidential Information or any patents, processes or know-how of the disclosing party, is granted by such party to the receiving party hereunder.

9. Cortec hereby gives Company notice that the Cortec Product(s) provided by Cortec may have been manufactured by Cortec solely for research and development purposes and may only be used by Cortec for such purposes. The materials contained in the Cortec Product(s) may not be listed with the U.S. Environmental Protection Agency, TSCA Inventory.

10. The parties agree not to export technical data or products, supplied to the receiving party by the disclosing party, to any country for which the export or release of technical data or products is prohibited by the laws and regulations of the government of the United States.

11. The disclosing party warrants that it has the unrestricted right to disclose any information that it submits, free of all claims of third parties. Information disclosed to one party by the other will not be in violation of any secrecy agreement the disclosing party has with any third party.

12. This Agreement shall be binding upon the parties hereto, their successors and assigns, and cannot be assigned by the receiving party without the disclosing party's written consent.

13. All disputes arising under this Agreement shall be brought, if at all, in and before a court located in the State of Minnesota, to the exclusion of the courts of any other state. Cortec hereby consents to the exclusive jurisdiction of any local, state or federal court selected by Cortec that is located within the State of Minnesota, and shall not disturb such choice of forum by Cortec.

14. This Agreement shall be governed by Minnesota law.

CORTEC CORPORATION

By: _____
Title: President/CEO

Date: 12/5/05

ECOCORTEC

By: _____
Title: _____

ECOCORTEC d.o.o.
Za proizvodnju i trgovinu
Slavonska 1, 31000 Osijek

Date: 08.12.2005.

ADDENDUM "B"

CORTEC LOGO



## ADDENDUM "C"

## PURCHASE TARGETS BY THE LICENSEE

Calendar Year 2006/2007

Calendar Year 2007/2008

## Purchased Products by the Licensee:

| Product | Units | Price |
|---------|-------|-------|

See attached!

All prices are ex-works St. Paul, Minnesota. Payment terms are subject to Cortec Corporation's standard terms and prior credit approval.

EcoCortec    11    12/5/2005 3:59:00 PM