UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CORTEC CORPORATION, a Minnesota
corporation,

               Plaintiff,

- against -

ERSTE BANK BER OESTERREICHISCHEN
SPARKASSEN AG (ERSTE BANK), An
Austrian corporation,

               Defendant.

------------------------------------------------------------x

07 Civ. 6094 (CM)

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J.:


**Introduction**


     Underlying this action is a lawsuit between an affiliate or subsidiary of plaintiff and an

affiliate or subsidiary of defendant concerning a loan that has been recalled. That lawsuit is

being litigated in Croatia, where the loan was executed and where both subsidiaries reside and do

business.  Now, however, the parents are getting involved; and they have brought this all-

Croatian fight more than 4000 miles, to New York City.

     Neither Plaintiff nor Defendant has any contact with this forum, and the matters in suit

did not take place here, either.  Therefore, the court dismisses the case on the ground of *forum*

*non conveniens*.

## Background

i. The Parties

Plaintiff Cortec is a Minnesota corporation in the business of producing anti-corrosive materials for industrial metals. Compl. ¶ 10. Its principal place of business is St. Paul, Minnesota. Id. ¶ 9. Although Cortec conducts its business throughout the Midwestern United States and much of the world, it does not appear to have an office, or to conduct substantial business, in New York. Cortec is run by its CEO and President, Boris Miksic, a dual United States and Croatian citizen who is involved in Croatian business and politics. Id. ¶ 21-24.

EcoCortec is a related venture, variously described as a "sister corporation," Def.'s Mem. at 4 n.1, and a "subsidiary" of Cortec. Compl. ¶ 28. EcoCortec was formed by Cortec and organized under the laws of Croatia. Id. Miksic appears to exert significant control over its operations, at times acting as its CEO.[1]

EcoCortec was formed to build and operate an "extrusion" plant in Beli Manistir, Croatia. The plant was to supply anti-corrosive film to Cortec, in furtherance of Cortec's business. Id.

Defendant Erste Bank der Oesterreichischen Sparkassen AG (hereafter Erste Bank AG) is an Austrian corporation with its principal place of business in Austria. It happens to have a New York City office. Id. ¶¶ 11, 13. Erste Bank AG is in the business of, inter alia, acquiring Croatian banks. One such acquisition was of Erste & Steiermarkische Bank d.d. (hereafter ESB), a Croatian bank. Erste Bank AG claims to own "slightly more than half of the shares" in ESB. Def.'s Mem. at 5.

---

[1] The nature of EcoCortec's ownership and organization appears to be one of the subjects of the litigation between ESB and EcoCortec that is pending in Croatia.

ii. The Contracts

The dispute between Cortec and Erste Bank AG (the parties) arises out of a loan contract executed between EcoCortec and ESB, and a corresponding surety contract executed between Cortec in favor of ESB.

As noted, EcoCortec was formed in 2004 to develop the parcel in Beli Manistir. Because the plant was to be located in what is known as a Croatian Free Zone (an area devastated in the wars of the 1990s), EcoCortec was eligible to receive funding through a program administered by the Croatian Bank for Reconstruction and Development (CBRD), whose mission it is to redevelop these war torn areas. Compl. ¶ 30-33. In order to qualify for the CBRD program, EcoCortec was required to obtain financing through a "Tier I" bank. Id.

Miksic, acting as CEO of EcoCortec, began seeking the necessary financing and eventually met with representatives of ESB. Id. ¶ 36. While the parties agree that Miksic met with—and eventually secured a loan from—ESB, details about what happened in the meetings are disputed. In both its complaint, and its papers opposing the motion to dismiss, Plaintiff makes a number of allegations tending to show that (1) ESB acted at all times with either express, apparent, or implied authority on behalf of Defendant Erste Bank AG; and that (2) Defendant Erste Bank AG was well aware of the loan agreement, the relationship between EcoCortec and Cortec, and the contracts between Cortec and its customers. Defendant argues that many of these allegations do not appear in the complaint and are therefore not properly before the court on a Rule 12(b)(6) motion to dismiss.

The loan agreement for 3 million euros was executed between EcoCortec and ESB on April 6, 2006. Id. ¶ 52-53. As a condition and "integral part" of the loan agreement, Cortec

entered into a Surety Agreement with ESB on the same day, guaranteeing EcoCortec's

performance of the loan agreement. Def.'s Mem. at 2. Both Agreements recite that the Surety

Agreement is "integral" to the Loan Agreement, which is to say, the loan would not have been

extended absent Cortec's standing as surety for repayment. Def.'s Ex. D, F.

Both the Loan and Surety Agreements contain forum selection clauses. Id. The Loan

Agreement stipulates that, "In case of dispute, the court in the place of [ESB]'s headquarters will

be the competent court." Def.'s Ex. D ¶ 14. The Surety Agreement stipulates that, "In case of

dispute arising from the application of this Agreement, the actual competent court in Zagreb

shall have the territorial jurisdiction." Def.s Ex. F, Art. 10.

The Surety Agreement also contains the following choice of law provision: "The

contracting parties agree that Croatian law will be the governing law." Id. The parties appear to

be in agreement that Croatian law will govern any disputes arising out of these contracts.

Approximately eleven months after the execution of the Agreements and the extension of

funds, ESB called the loan. Compl. ¶ 54. Whether it had the right to call the loan is the subject

of litigation between EcoCortec and ESB that is pending in the Croatian courts (as stipulated by

the parties in the Loan Agreement). Id. ¶ 59.

The complaint filed in the Southern District of New York alleges that Erste Bank AG

was ultimately responsible for the loan's recall. Plaintiff alleges that, when ESB called the loan

in from EcoCortec, it was acting as an agent for Erste Bank AG. Id. ¶¶ 54-58. Plaintiff also

alleges that Erste Bank AG knew about the relationship between EcoCortec and Cortec, as well

as the various relationships between Cortec and its customers. Id. ¶¶ 50-51. Plaintiff claims that

Defendant Erste Bank AG tortiously interfered with Cortec's contract with EcoCortec, as well as

Cortec's contracts with "certain high volume customers," Id. ¶¶ 61-69; and that Defendant Erste

4

Bank AG tortiously interfered with Cortec's prospective economic advantage. In the alternative, plaintiff alleges that Erste Bank AG tortiously interfered with Cortec's various business relationships. Id. ¶¶ 70-77. Cortec asks for a declaration that it is not in default under the terms of the Surety Agreement and damages in the neighborhood of $1,000,000. Id. ¶ 98, Prayer for Relief.

Defendant Erste Bank AG moved to dismiss the complaint. It argues that Cortec has failed to state a claim, on the basis that it has not pleaded anything other than "unsupported assertions" that an agency relationship between Defendant and ESB ever existed, Def.'s Mem. at 11-15, or that Erste Bank AG had knowledge of Cortec's contracts and business relationships. Id. at 7-11. Alternatively, Defendant argues that, if there is any relationship between Cortec and Erste Bank AG, the forum selection clauses in the Loan and Surety Agreements vest Croatian courts with the exclusive authority to determine any controversy between the parties arising from the contracts. Id. at 16-19. In the alternative, Defendant argues that this case should be dismissed under the theory of *forum non conveniens*, due to the presence of material witnesses and evidence in Croatia, and the absence of ties between this controversy and New York,. Id. at 19-22. Finally, Defendant argues that EcoCortec and ESB are indispensable parties under Federal Rule of Civil Procedure 19, and that in their absence, this case must be dismissed. Id. at 23-24.

For the reasons discussed below, Defendant's motion to dismiss on the theory of *forum non conveniens* is granted. As a result, there is no need to reach the remaining issues. See, e.g., BFI Group Divino Corp. v. JSC Russian Aluminum, 481 F.Supp.2d 274, 279 n.3 (S.D.N.Y. 2007).

## Discussion

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). In Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001), the Second Circuit, sitting *en banc*, adopted a three-part inquiry to govern analyses of motions to dismiss for *forum non conveniens*. See Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005); see also Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003); DiRienzo v. Philip Services Corp., 294 F.3d 21, 28 (2d Cir. 2003). "The defendant bears the burden to establish clearly each factor ... and to demonstrate that the balance tilts strongly in favor of the purported alternative forum." PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 74 (2d Cir. 1998) (internal citations omitted).

The first step in a *forum non conveniens* analysis is determining what level of deference to accord a plaintiff's choice of forum. DiRienzo, 294 F.3d at 28 (citing Iragorri, 274 F.3d at 73). After this is decided, a court must consider whether there exists an adequate alternative forum for the litigation. Iragorri, 274 F.3d at 73. If one exists, a court must then weigh the relative convenience of the forums by evaluating certain private and public interest factors. Id. "The greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing forum non conveniens dismissal." Id. at 74.

### i.  Amount of Deference to Plaintiff's Choice of Forum

The Second Circuit has established a "sliding scale" approach to determine the degree of deference to accord a plaintiff's choice of forum. Id. at 71.  Under that scale,

> the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States ...,[the greater deference must be accorded the plaintiff's choice of a forum, and] the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*

Id. at 72.

Factors to be considered include: "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." Id.  On the other side of the equation, circumstances "generally indicative of forum shopping," see Norex, 416 F.3d at 155, include "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum," Iragorri, 274 F.3d at 72.

A district court is not required to consider every single factor specifically in making this determination. Norex, 416 F.3d at 155.  Where the plaintiff's choice is determined to stem more from concerns of convenience, it is entitled to greater deference; where the choice indicates forum-shopping, it is entitled to less deference.  Iragorri, 274 F.3d at 71-72; Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F.Supp.2d 741, 755 (S.D.N.Y. 2006).

However, less deference is given to plaintiff's choice when the action is *not* in tort, when the plaintiff sought out the transaction giving rise to the suit, when suit in the international forum

was foreseeable in light of the transaction, and when the plaintiff is an organization-rather than an individual-that can easily handle the difficulties of engaging in litigation abroad. ICC Industries Inc. v. Israel Discount Bank, Ltd., 170 Fed.Appx. 766, 767-768 (2d Cir. 2006) (citing Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 238 (2d Cir. 2004)).

Every relevant factor suggests that Plaintiff's choice is not entitled to substantial deference.

Plaintiff has no ties to speak of to the Southern District of New York. Cortec is a Minnesota corporation headquartered in Minnesota. Defendant is an Austrian bank, sued here because its United States office (which has nothing to do with the controversy in suit) happens to be located in New York City. Three of the four major players in this multi-faceted dispute (ESB, EcoCortec, Erste Bank AG) are European corporations, for whom Croatia or Austria would be far more convenient fora. None of the witnesses necessary to resolve this action resides in New York and, with the exception of Miksic, none appears to reside in the United States. Most or all of the relevant documentary evidence is likewise situated abroad, and it is written in Croatian rather than English. Finally, the parties agree that the law to be applied to Plaintiff's claims is Croatian law, rather than New York law.[2]

While Plaintiff's claims sound in the tort of interference with contract, that business tort arises out of voluntary contractual relations. See Carey, 370 F.3d at 238 (distinguishing cases where Plaintiffs involuntarily suffered torts involving physical injury from case where Plaintiff voluntarily sought out a business relationship abroad). Plaintiff sought out the transaction that gave rise to this suit by engaging a Croatian bank to procure financing demanded by a Croatian government agency in order to develop a Croatian parcel of land. The explicit forum selection

---

[2] Even if the parties are wrong about the governing law, there can be no suggestion that this forum's law will control the inducing breach of contract and tortuous interference claims asserted by Cortec against Erste Bank AG.

clauses contained in the underlying contracts demonstrate that litigation in Croatia was foreseeable.

Further, Cortec is an organization that (through a subsidiary) is attempting to do business in Croatia, rather than an individual who lacks experience in the world of international law and business. Even if it were true that, for all intents and purposes, Cortec is Miksic (i.e. if the court were to pierce the corporate veil), Miksic is not the sort of individual plaintiff that this factor is designed to protect. Miksic executed the Surety Agreement on Cortec's behalf in Croatia; he is a Croatian citizen with extensive knowledge of how Croatian business and law works. Finally, Miksic is already participating in litigation abroad on behalf of EcoCortec, arising out of the very agreements that Plaintiff alleges Defendant interfered with. I therefore must conclude that Miksic (and Cortec) would not experience any great difficulty litigating abroad.

In light of these factors, I conclude that Plaintiff's choice of forum is not entitled to substantial deference. Defendant's burden to establish the remaining factors is, correspondingly, lighter.

### ii. Availability of an Adequate Alternative Forum

The next step in the Gilbert analysis is determining the existence of "a presently available alternative forum in which plaintiff can litigate its claim." Norex, 416 F.3d at 160; see also Iragorri, 274 F.3d at 73. The defendants bear the burden of establishing the existence of an adequate alternative forum. USHA (India), Ltd. v. Honeywell Int'l, Inc., 421 F.3d 129, 135 (2d Cir. 2005) (citing Aguinda v. Texaco, Inc., 303 F.3d 470, 476 (2d Cir. 2002)); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000). "An alternative forum is generally adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits

litigation of the subject matter of the dispute." Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan, 273 F.3d 241, 246 (2d Cir. 2001) (internal quotation and citations omitted). "'In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative ...'" Aguinda, 303 F.3d at 476-77 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.22 (1981)).

Despite the submission of three memoranda of law, all speaking to the appropriateness of dismissing under *forum non conveniens*, neither of the parties explicitly addresses such basic questions as whether (1) Erste Bank AG is amenable to suit in Croatia, and (2) whether Croatian courts recognize the business interference claims that lie at the heart of Cortec's complaint. Omission of the second factor can perhaps be explained by the fact that the parties share the assumption that Croatian law will govern any dispute between the parties (See Def.'s Mem. at 16, 22-23; Pl.'s Opp. at 22; Def.'s Reply at 10), which means that the locus of the lawsuit will not affect the outcome.

As to whether or not Erste Bank AG is amenable to suit in Croatia, it bears mentioning that defendants asserting *forum non conveniens* usually stipulate their willingness to subject themselves to the jurisdiction of the alternative forum. See Jota v. Texaco Inc., 157 F.3d 153, 159 (2d Cir.1998) ("Accordingly, dismissal for *forum non conveniens* is not appropriate, at least absent a commitment by [the defendant] to submit to the jurisdiction of the Ecuadoran courts for purposes of this action.") I assume that by making its argument, Erste Bank AG implicitly consents to subject itself to the jurisdiction of the competent Croatian court. To be on the safe side, however, I will condition dismissal on Defendant's submission to Croatian court jurisdiction if Plaintiff chooses to bring suit in Croatia rather than Austria (see below). In re Union Carbide Corp. Gas Plant Disaster, 809 F.2d 195, 203-04 (2d Cir. 1987) (affirming

10

dismissal for *forum non conveniens* and noting that condition that defendant submit to jurisdiction India and waive statute of limitations defense was "not unusual and ha[d] been imposed in numerous cases where the foreign court would not provide an adequate alternative in the absence of such a condition").

Leaving these preliminary questions, the main point of contention between the parties is whether this is one of those "rare circumstances" where the remedy available through litigation abroad will be "clearly unsatisfactory" or will deny Plaintiff access to "basic justice." Piper, 454 U.S. at 254 n.22 ("In rare circumstances ... where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative"). Such a claim is made out, for instance, where one is deprived of full rights under the law, Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 335 (S.D.N.Y. 2003) (holding that Sudan was not an adequate forum, in part because "plaintiffs, who are non-Muslims, enjoy greatly reduced rights in Sudan under the system of Islamic law ( Shari'a )"), or where no remedy whatsoever is available for the type of claim raised. Gonzales v. P.T. Pelangi Niagra Mitra Int'l., 196 F. Supp. 2d 482, 496 (S.D. Tex. 2002) ("Put another way, the remedy provided by the foreign forum qualifies as inadequate only when it amounts to 'no remedy at all.'") (citing Piper, 454 U.S. at 254). Other cases where an alternative forum has been found inadequate include: Cabiri v. Assasie-Gyimah, 921 F.Supp. 1189, 1199 (S.D.N.Y. 1996) (denying dismissal where Ghanian plaintiff, who had political asylum status, had well-founded fear of prosecution if he brought action alleging torture by Ghanian officials in Ghanian courts); Rasoulzadeh v. Associated Press, 574 F. Supp. 854, 861 (D.C.N.Y. 1983) (denying *forum non conveniens* dismissal because "if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot"); Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A., 528 F. Supp.

1337, 1342 (D.C.N.Y. 1982) (concluding that, where one party was a state owned corporation, "serious questions about the independence of the Chilean judiciary vis-à-vis the military junta currently in power" rendered Chile an inadequate forum).

Here, Croatia appears to be an adequate alternative forum, and circumstances do not clearly demonstrate that Plaintiff will be deprived of basic justice there. Cortec's voluntary agreement to litigate claims arising out of its Surety Agreement in Croatia is fatal to any contention that Croatia does not provide Plaintiff with an adequate forum. In addition, EcoCortec is pursuing its contractual remedies against ESB in Croatia. The decision denying EcoCortec's request for a temporary injunction thoughtfully applies Croatian commercial law – something in which that court is expert, and this court is not. Def.'s Ex. M. Moreover, EcoCortec has a right to appeal from that decision. Id. On the record before me, it appears that Cortec can receive basic justice in Croatia.

Plaintiff bases his argument that it will be deprived of basic justice on several cases in which American judges denied *forum non conveniens* motions on that ground that Croatia does not provide an adequate alternative forum. Pl.'s Opp. at 20, citing Vidovic v. Losinjska Plovidba Oour Broadarstvo, Civ. A. No. 93-3887, 1995 WL 224397 (E.D. Pa. April 18, 1995); Sablic v. Armada Shipping APS, 973 F. Supp. 745 (S.D. Tex. 1997); and Pliva D.D. v. Baxter Int'l Inc., No. 03 C 7371, 2004 WL 2011391 (N.D. Ill. Aug. 24, 2004). However, two of these decisions (Vidovic and Sablic) were issued while Croatia was either mired in, or emerging from, a disastrous armed conflict. The most recent decision, Pliva, noted that Croatia was a generally adequate forum, but concluded that backlogs coupled with Croatia's inexperience in products liability litigation rendered the forum inadequate in a products liability case. 2004 WL 2011391, at *5. Pliva is also distinguishable from this case, because many of the named parties were

United States residents, and much of the conduct that was the basis of the suit took place in the United States. Id. at *1-4 Here, everything that is relevant happened in Croatia, and except for Cortec, all the players are European (and most are Croatian).

Plaintiff fails to cite two cases—one from this Court—that have found Croatia to be an adequate forum. Radeljak v. Daimlerchysler Corp., 475 Mich. 598 (Mich. 2006) (holding that Croatia was more convenient alternative forum than Michigan); Abrar Surgery Ltd. v. M.V. Jolly Oro, 1999 WL 295003 (S.D.N.Y. May 11, 1999) (MBM) (enforcing forum selection clause and refusing to find that party forced to litigate in Croatia "will be effectively deprived of a day in court due to the grave inconvenience or unfairness of the selected forum [i.e., Croatia]") (internal quotations and citations omitted).

I am sympathetic to Miksic's concerns about his ability to receive justice in light of his politically active past. But Miksic is not a party to this lawsuit. Moreover, any concern in this regard is undercut by Cortec's signing a Surety Agreement that obligates it to litigate in Croatia, and by Miksic's involvement in the pursuit of EcoCortec's legal remedies in the Croatian court.

The only evidence offered by Plaintiff is a series of news reports and government statements, suggesting that there may be political corruption in the Croatian judiciary. But this hearsay does not afford a sufficient basis for me to conclude that Croatian courts are unable to dispense "basic justice" in this case. See BFI Group Divino Corp. v. JSC Russian Aluminum, 481 F.Supp.2d 274, 283 (holding that Nigeria was an adequate alternative forum). The Second Circuit "[has] been reluctant to find foreign courts corrupt or biased," absent some particularized showing of wrongdoing. Monegasque De Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine, 311 F.3d 488, 499 (2d Cir.2002)). My colleague Judge Haight put the point well when he observed that:

13

[P]laintiff's preference for an American court cannot be indulged on the basis of an American judge's speculation that his Israeli colleagues would violate their oaths of office.... [I]t will be a black day for comity among sovereign nations when a court of one country, because of a perceived "negative predisposition," declares the incompetence or worse of another nation's judicial system.

Flores v. S. Peru Copper Corp., 253 F. Supp. 2d 510, 539 (S.D.N.Y. 2002).

Cortec's hearsay allegations of corruption do not rise to the level of demonstrating "incompetence or worse" in the Croatian judiciary. The allegations are further belied by Plaintiff's active efforts to build in Croatia an "industrial plant whose successful operation will necessarily be dependent on fair application of the laws." BFI Group, 481 F.Supp.2d at 238.

I therefore conclude that Croatia offers Plaintiff an adequate alternative forum.

However, if Plaintiff is at all worried about suing in Croatia, it has available an alternative forum with ties to the controversy in suit—namely, Austria, where Defendant is incorporated, and which cannot be impugned by Miksic for either political or jurisprudential reasons. Nothing in this decision bars Cortec from suing Erste Bank AG in the country where the bank is headquartered and is clearly amenable to suit.

### iii. Balancing Factors

The last step in assessing the convenience of plaintiff's chosen forum is to balance the factors identified by the Supreme Court in Gilbert: the private interest factors reflecting the interests of the parties at bar and the public interest factors reflecting the interests of the public. To prevail, a defendant normally has the burden to demonstrate that both the private and public interest factors "strongly" favor dismissal. Metito (Overseas) Ltd. v. General Elec. Co., 2006 WL 3230301, at *5 (S.D.N.Y. Nov. 7, 2006) (quoting DiRienzo, 294 F.3d at 30-31). "[A] lesser degree of deference to the plaintiff's choice ... does not guarantee dismissal.... The action should

be dismissed only if the chosen forum is shown to be genuinely inconvenient and the [alternative] forum significantly preferable." Iragorri, 274 F.3d 74-75.

The Second Circuit has endorsed the use of the non-exclusive list of private and public interest factors delineated in Gilbert to evaluate a *forum non conveniens* motion. The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive. Iragorri, 274 F.3d at 73-74.

The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community. Id. at 74; see also Gilbert, 330 U.S. at 508.

Again, nearly every relevant factor points in favor of litigation in Croatia.

As far as appears, every relevant piece of evidence will be found in Croatia or Austria, and written in Croatian or German. No evidence is likely to be found in New York or written in English. The "ease of access" adduced in the first interest must include the private cost of providing certified translations of hundreds of pages of documentary evidence. This is a cost that could easily be avoiding by litigating in a place where the judges speak Croatian.

The cost of transportation to likely witnesses also favors dismissal here. All of the parties to the Loan and Surety agreements either reside or habitually do business in central Europe. None resides in New York, and with the exception of Miksic himself (who has a residence in Minnesota), none appears to reside in the United States. Plaintiff attempts the commonsense argument that convenience for one party is necessarily inconvenience for the other; however, when it comes to the transportations of witnesses in this case, it is the slight

15

convenience for one (i.e., Miksic travels from St. Paul to New York City rather than Zagreb) balanced against the major inconvenience to everyone else (i.e., every Central European witness travels to New York rather than Zagreb).

The third private interest factor, the availability of compulsory process, also appears to support dismissal. Many of the potential witnesses in the case are Croatian, and are not subject to process from this Court. Discovery pursuant to international regulations will be cumbersome and time consuming. Although Plaintiff is a United States corporation, there would be no need to compel its presence in Croatia, as it would be bringing suit of its own accord. Cortec raises the possibility that any Austrian witnesses would be no more amenable to process in Croatia than they would in New York. In any event, the potential difficulty in securing the presence of Austrian witnesses is not alleviated by bringing suit in New York, and bringing suit in New York wipes out the significant gain of subjecting the Croatian witnesses to Croatian compulsory process. Plaintiff could, if concerned about its ability to secure witnesses from defendant, sue Erste Bank AG in Austria.

Plaintiff fares no better under the public interest factors. When the dispute involves guarantees relating to a loan from a Croatian Bank to a Croatian corporation for the purchase of a Croatian parcel of land under Croatian law, the interest in settling local disputes in a local forum favors dismissal of this suit by a New York court. There is nothing to balance on the other side, because neither the conflict nor any party has any tie *to New York*. Difficulties of applying foreign law are best avoided by leaving this dispute to the Croatian courts, since there are no points of New York law that would need to be applied by the Croatian courts. The final factor, avoiding imposing jury duty on jurors with no interest in the outcome, is likewise best served by adjudication in Europe, where all the events in suit took place.

Plaintiff's only argument in favor of this court deciding this controversy is that Miksic is a United States citizen, and Cortec is a United States corporation, and that the United States and its people have an interest in seeing their legal rights vindicated. This is undoubtedly true. However, by signing the Surety Agreement, Cortec agreed to resolve disputes relating to the EcoCortec loan in Croatia under Croatian law. It cannot now be heard to complain that its legal rights would be better served in New York. As for Miksic, he is not a party to this action, and he is neither a citizen nor a resident of New York.

In sum, there is nothing to recommend this forum, and a great deal to recommend Croatia, where an action pertinent to this one is currently pending. Plaintiff's prerogative in selecting a forum is certainly due some by this court. However, in a case where the genuine inconvenience cause by exercising jurisdiction so far outweighs any public or private benefits to the parties involved, the doctrine of *forum non conveniens* is the appropriate tool for disposing of the case.

## Conclusion

For these reasons, the complaint will be dismissed, as long as Defendant, within 10 days, agrees in writing to submit to the jurisdiction of Croatia if Plaintiff chooses to sue there. If there is any argument that the statute of limitations in either Croatia or Austria has run since the commencement of this action, the Defendant will also have to waive the statute of limitations as a condition of dismissal. If, however, the relevant Croatian or Austrian statute of limitations had already run when Plaintiff brought suit here, this court does not intend that such a waiver would revive the statute.

This constitutes the decision and order of the Court.

Dated: February 11, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

18